609 So.2d 1337 (1992)
Alberto DIAZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-1694.
District Court of Appeal of Florida, Third District.
December 1, 1992.
*1338 Bennett H. Brummer, Public Defender, and Louis Campbell, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen. and Charles M. Fahlbusch, Asst. Atty. Gen., for appellee.
Before HUBBART, BASKIN and COPE, JJ.
COPE, Judge.
Albert Diaz appeals his conviction and sentence for official misconduct. We affirm.
In September, 1989, Diaz, a City of Miami Police officer, was charged with battery and official misconduct. The charges stemmed from an incident which occurred in July, 1989.
Diaz was assigned to an area of Coconut Grove which included Kennedy Park. Diaz and his fellow officers were told to clear out the park at sundown because the police department was receiving complaints from area residents about activities in the park after the park was supposed to be closed. Anyone in the park after sunset, when the park closed, was in violation of a city ordinance and could be arrested.
On July 31, 1989, Diaz and another officer, Alejandro Macias, went to the park at closing time and began clearing it out. Diaz requested identification from each person and then asked Officer Macias to run a computer check for outstanding warrants while the person waited in the parking lot. While several people were standing in the parking lot, they observed Diaz approach Dr. Leonard Frank, who had been jogging in the park. Witnesses claimed that Diaz called Dr. Frank over and that Dr. Frank replied, "Why?" Diaz then asked Dr. Frank if he was deaf and approached him. Dr. Frank again inquired as to why he was being questioned. Several witnesses said they saw Diaz strike Dr. Frank or push him. Diaz and Dr. Frank then began to walk quickly toward the police vehicles in the parking lot. When officer Macias noticed that Diaz seemed to be having problems with Dr. Frank, Macias met Diaz and Dr. Frank as they arrived in the parking lot. Both officers then "took down" Dr. Frank, handcuffed him, and placed him in a police car. Several witnesses were disturbed by what they perceived as unnecessary roughness by the police officers and one person called the police department and asked for a supervisor to come to the park to investigate. A supervisor arrived at the park and questioned the witnesses. Diaz was also questioned at the police station. Dr. Frank was charged with violating the city ordinance, resisting arrest without violence, and disorderly conduct. Diaz wrote on the arrest report that Dr. Frank used obscene language, tried to jog away from Diaz and that Diaz had to chase him before he could arrest him. According to Diaz, the disorderly conduct arose from Dr. Frank's belligerence in the parking lot, which made a crowd gather. The resisting arrest charge arose from Dr. Frank's refusal to be handcuffed.
During the first trial, the state called several people who witnessed the incident. Their testimony differed as to the details of what occurred. They stated that Diaz hit or pushed Dr. Frank and then angrily walked him to the parking lot. The witnesses were not sure how Dr. Frank ended up on the ground, but they said that after Dr. Frank was handcuffed or during the handcuffing, Diaz kicked Dr. Frank several times and hit him with his police flashlight.
Diaz' lieutenant was called by both the state and by Diaz. Lieutenant Ronald Bentley stated that Dr. Frank complained Diaz had beaten him up unnecessarily. The lieutenant observed injuries to Dr. Frank and questioned Diaz about them. Diaz said he did not know how the injuries occurred, but suggested they might have occurred during the arrest.
Dr. Frank testified he never used obscene language or tried to run away from Diaz. He said that he merely wanted to know why he was being questioned by the police officer. He said that Diaz hit him in the chest and then told him to go to the parking lot. Dr. Frank said Diaz never told him he was under arrest or the nature of the charges until he was in the police *1339 car. Dr. Frank testified that he was kicked in the side and hit in the head with an object he assumes was a flashlight because he heard the "sound of plastic."
Diaz called Officer Macias to testify. Macias said he first observed Diaz and Dr. Frank when they were walking to the police car. Officer Macias said Dr. Frank was "waving his arms violently." When Officer Macias reached the two men, Diaz told Macias they had to "take down" Dr. Frank. The two officers then threw Dr. Frank to the ground and attempted to handcuff him. Officer Macias said Dr. Frank appeared to be laying on his left arm and would not let Officer Macias handcuff him. Dr. Frank kept asking, "What is going on?" Officer Macias said while he was handcuffing Dr. Frank he could not see if Diaz kicked Dr. Frank. Officer Macias also said he never heard Dr. Frank use obscene language or Diaz tell Dr. Frank he was under arrest.
Diaz also testified. He said Dr. Frank used obscene language on the jogging path and on the way back to the parking lot. He said that although he wrote in the arrest report that Dr. Frank jogged away, Dr. Frank actually walked quickly away from Diaz toward the parking lot. Diaz also said although he wrote he had to "chase" Dr. Frank, he actually had to hurry up to catch him as Dr. Frank walked away and the chase covered a space of about 10 to 15 feet. Diaz said he never hit or kicked Dr. Frank and he assumed the injuries occurred while Dr. Frank was struggling on the ground.
During closing argument, the state argued that Diaz was guilty of battery because he hit and kicked Dr. Frank without justification. The state also argued that Diaz was guilty of official misconduct because he lied on the arrest report. The state claimed Diaz wrote three lies: 1) Dr. Frank used obscene language, 2) Dr. Frank jogged away, and 3) Diaz had to give chase. The state further argued that Diaz lied because he knew he used excessive force in arresting Dr. Frank and he wanted to avoid a criminal prosecution and a reprimand or worse from his police department.
Diaz argued that Diaz only used the force necessary to arrest Dr. Frank. Diaz argued that the witnesses stories varied significantly and their testimony was not credible. He said that Dr. Frank refused to cooperate and therefore Diaz was justified in arresting him.
The trial judge instructed the jury on the elements of battery and official misconduct.[1] The trial judge also instructed the jury on justifiable use of a force by a law enforcement officer.[2] The jury acquitted the police officer of the battery charge and was hung as to the official misconduct charge. The trial judge declared a mistrial as to the latter charge.
*1340 The state tried Diaz again on the official misconduct charge. Diaz never moved to dismiss the charge on double jeopardy grounds. The state moved in limine to prevent Diaz from making any mention of the acquittal in the first trial. Diaz agreed that there should be no mention of the acquittal and only requested that the parties determine a way to refer to the sworn testimony offered during the first trial without mentioning that the trial took place. Diaz also asked the trial court to give the jury limiting instructions telling them that Diaz was only on trial for the charges alleged in the information. The court gave the jury such a limiting instruction at the beginning of the trial and again at the end of the trial.
During the second trial, the state called several of the same witnesses it called during the first trial. The state also called Diaz' sergeant and the officer who questioned witnesses at the scene on the night of the incident. Diaz called the same witnesses. The state argued that Diaz used excessive force during the arrest of Dr. Frank and that he lied on the police report in order to justify the use of force and thereby avoid being reprimanded by his superiors. The state did not argue during the second trial that Diaz was also trying to avoid criminal prosecution. The trial judge instructed the jury only on the elements of official misconduct and on the justifiable use of force by a law enforcement officer. The jury convicted Diaz.
Diaz appeals his conviction, claiming that the second trial violated his right against double jeopardy as guaranteed by the United States and Florida Constitutions because the state offered evidence of a crime, battery, for which Diaz had been acquitted. Diaz claims that although he never objected to the evidence, and, in fact, acquiesced to its admission, the error was fundamental and his conviction for official misconduct should be vacated. We disagree and affirm.
During the second trial, the state offered the evidence of Diaz' excessive use of force not to prove he committed a battery on Dr. Frank, as in the first trial, but to show why Diaz lied on his arrest report. If Diaz used excessive force, he would have been subject to disciplinary proceedings by his department. Diaz' superiors could have disciplined Diaz without determining beyond a reasonable doubt that Diaz was guilty of battery. The events which occurred in the park were also inseparable from the events which led to the written police report. The state could not have proven the official misconduct charge without putting on evidence of the events leading up to the writing of the police report. The trial court cautioned the jury several times about the nature of the charge Diaz was being tried for.
The Fifth Amendment of the United States Constitution protects a person from being placed twice in jeopardy for the same crime. The Supreme Court has established a two-prong test for determining if a subsequent prosecution violates the double jeopardy clause. Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).
The first prong of the analysis is application of the Blockburger[[3]] test. Under Blockburger, a subsequent prosecution is barred when: 1) both offenses have identical statutory elements; or 2) one offense is a lesser included offense of the other.
* * * * * *
[A] second prong is considered: the subsequent prosecution will also be barred if "to establish an essential element of an offense charged in that prosecution, [the government] will prove conduct that constitutes an offense for which the defendant has already been prosecuted."
Johnson v. State, 595 So.2d 244, 246 (Fla. 4th DCA 1992) (citations omitted), review denied, 605 So.2d 1264 (Fla. 1992). This case clearly does not fall within the first prong of the test. The two crimes have different statutory elements and one is not a lesser included offense of the other.
The second prong of the test has been interpreted as a "same conduct" test, not a "same evidence" test. Corbin, 495 *1341 U.S. at 521, 110 S.Ct. at 2093. Thus, the Supreme Court has held that as long as the state is not attempting to punish the same conduct twice, it may introduce the same evidence in a subsequent trial, even if the defendant was acquitted in the earlier trial. See Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The state may introduce evidence of the prior acquitted crime to prove, inter alia, identity, motive or intent. The defendant has the burden to "demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." 493 U.S. at 350, 110 S.Ct. at 673.
Dowling also holds that "an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." 493 U.S. at 349, 110 S.Ct. at 672.
In this case, the state introduced the evidence of Diaz' excessive use of force to prove the element of intent in the crime of official misconduct. In the first trial, the state introduced the evidence of excessive force for two reasons, first, to prove that Diaz committed a battery on Dr. Frank and second, to prove the element of intent in the official misconduct charge. The state argued during the first trial that Diaz lied on the arrest report to avoid criminal prosecution as well as to avoid being disciplined by his department. During the second trial, the state only argued that Diaz was trying to avoid disciplinary proceedings, not criminal prosecution since that argument was foreclosed by the earlier acquittal. In the internal police disciplinary proceedings, of course, a lower standard of proof would apply. The state was at liberty to introduce the "same evidence" to prove Diaz' intent, as long as Diaz was not being prosecuted for battery a second time. See id. at 350, 110 S.Ct. at 673. Therefore, under the Federal Constitution, Diaz' right against being placed twice in jeopardy was not violated.
Florida has developed its own body of law interpreting the double jeopardy clause of the state constitution. See Burr v. State, 576 So.2d 278, 280 (Fla. 1991).
The leading case in Florida interpreting the double jeopardy clause in the Florida Constitution is State v. Perkins, 349 So.2d 161 (Fla. 1977). In Perkins the defendant was on trial for rape. The state introduced Williams rule[4] evidence of a previous charged attack for which the defendant was acquitted. The court reversed the conviction. The court first analyzed Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In Ashe the United States Supreme Court held that the doctrine of collateral estoppel was embodied in the Fifth Amendment to the United States Constitution. The Perkins court held that
the Ashe rule forbids the admission in a subsequent trial of evidence of an acquitted collateral crime only when the prior verdict clearly decided in the defendant's favor the issue for which admission is sought. From Ashe we know the double jeopardy clause of the Fifth Amendment ... does not forbid the admission of all evidence of acquitted collateral crimes, but only evidence which the state is collaterally estopped from introducing.

State v. Perkins, 349 So.2d at 163 (emphasis added).[5]
The court went on to say:
We agree with Wingate [v. Wainwright, 464 F.2d 209 (5th Cir.1972),] that it is fundamentally unfair to a defendant to admit evidence of acquitted crimes. To the extent that evidence of the acquitted crime tends to prove that it was indeed committed, the defendant is forced to reestablish a defense against it. Practically, he must do so because of the prejudicial effect the evidence of the acquitted crime will have in the minds of the jury in deciding whether he committed the crime being tried. It is inconsistent with the notions of fair trial for the state to force a defendant to resurrect a prior defense against a crime for which *1342 he is not on trial. Therefore, we hold that evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial. Nothing we say here forbids admission under the "Williams Rule" of relevant evidence of collateral crimes for which acquittals have not been obtained.
Id. at 163-64.[6]
Perkins applied to Williams rule evidence. Perkins has also been applied to evidence introduced during the sentencing phase of capital cases. Burr v. State, 576 So.2d at 280-81. The Florida Supreme Court has made clear, however, that the Perkins rule does not invariably apply to preclude introduction of otherwise relevant evidence where the evidence has also been introduced in an earlier criminal case, even though the defendant was acquitted in the earlier prosecution.
In Amoros v. State, 531 So.2d 1256 (Fla. 1988), the defendant was on trial for murder. The state needed to connect Amoros with the murder weapon, a gun. The state sought to introduce evidence from a prior trial in which Amoros was acquitted of murder, but in which the same gun was used to kill the victim. Id. at 1257. The jury was instructed to consider the evidence of the other killing for the limited purpose of proving identity. Id. The supreme court held that the admission of the evidence of the acquitted crime was not erroneous because it "was the only evidence the state had to link Amoros to the killing of Rivero." Id. at 1259. The court determined that the evidence was relevant and necessary for a proper resolution of the issues in the trial. "Perkins is clearly distinguishable because in that case the focus was on a similar pattern of criminal conduct rather than the linking of a defendant to a critical piece of evidence. We conclude that the evidence was relevant and its prejudice did not substantially outweigh its probative value." Id. at 1260.
Here, as in Amoros, the evidence was admissible. The acquittal of the battery charge did not amount to an acquittal of disciplinary charges for use of excessive force, nor did it collaterally estop the internal affairs unit from proceeding against defendant pursuant to the department's internal disciplinary procedures. The evidence of defendant's conduct in the park was relevant and necessary to establish an essential element of the crime charged. The state used the evidence of Diaz' actions to show why he would want to falsify the police report. It was not introduced to retry the battery case. Under Amoros, the evidence was admissible. Diaz' attorney apparently understood this and completely acquiesced in the admission of the evidence and the argument by the state. Therefore, Diaz has shown no error, much less any fundamental error, in the admission of the evidence.
There is no merit to the other points on appeal.
Affirmed.
NOTES
[1] Battery, § 784.03, Fla. Stat. (1989):

Before you can find the defendant guilty of Battery, the State must prove the following element beyond a reasonable doubt:
a. (Defendant) intentionally touched or struck (victim) against his will.
b. (Defendant) intentionally caused bodily harm to (victim).
Official Misconduct, § 839.25, Fla. Stat. (1989):
The state must prove that
1. (Defendant) is a public servant and that
2. (Defendant) knowingly falsified or caused another to falsify an official record or official document, and that
3. (Defendant) did so with corrupt intent to obtain a benefit for himself or another, or to cause unlawful harm to another.
Corrupt means done with knowledge that the act is wrongful and with improper motives.
[2] Justifiable use of force.

A law enforcement officer or any person he has summoned or directed to assist him need not retreat from or stop efforts to make a lawful arrest because of resistance or threatened resistance to the arrest.
The officer is justified in the use of any force that he reasonably believes is necessary to defend himself or another person from bodily harm while making the arrest.
A law enforcement officer or other person who has an arrested person in his custody is justified in the use of any force that he reasonably believes to be necessary to prevent the escape of the arrested person from custody.
A person is not justified in using force to resist an arrest by a law enforcement officer who is known or reasonably appears to be a law enforcement officer. However, if an officer uses excessive force to make an arrest, then a person is justified in the use of reasonable force to defend himself, but only to the extent that he reasonably believes such force is necessary.
[3] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[4] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); § 90.404, Fla. Stat. (1991).
[5] The Perkins court upheld and approved Lawson v. State, 304 So.2d 522 (Fla. 3d DCA 1974), cert. denied, 315 So.2d 181 (Fla. 1975).
[6] Burr makes clear that the foregoing analysis now rests on state law. 576 So.2d at 280.