NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


EVINCSE DORELUS,                    )
                                    )
              Appellant,            )
                                    )
v.                                  )        Case No. 2D14-67
                                    )
STATE OF FLORIDA,                   )
                                    )
              Appellee.             )
_____ )

Opinion filed January 16, 2015.

Appeal from the Circuit Court for Manatee
County; John Lakin, Judge.

Howard L. Dimmig, II, Public Defender, and
Siobhan Helene Shea, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Brandon R. Christian,
Assistant Attorney General, Tampa, for
Appellee.


VILLANTI, Judge.

          Evincse Dorelus seeks review of his conviction for one count of felon in

possession of a firearm, which was prosecuted separately after he had been acquitted

of a charge of aggravated battery with a firearm causing great bodily harm that arose

out of the same events.  Under the unique set of facts presented here, the prosecution

on the charge of felon in possession of a firearm, even though bifurcated, was nevertheless barred by Dorelus' prior acquittal on the related charge; therefore, we must reverse and remand for discharge.

Dorelus was charged with one count of aggravated battery with a firearm causing great bodily harm and one count of felon in possession of a firearm after his wife sustained an injury to her hand on Thanksgiving in 2012.[1] Early in the proceedings, Dorelus moved to sever the two charges, which motion was granted without qualifications, and the State proceeded to trial first on the more serious aggravated battery charge. At that trial, Dorelus' wife testified that she and Dorelus were home alone in the afternoon. At some point, they both took a nap, and she awoke from that nap to find Dorelus gone. She called and texted him, but he did not respond. When he did return home, he accused her of having another man at the house. She denied this, but the argument continued. Finally, Dorelus left the room, and his wife thought the argument was over. However, according to her, Dorelus returned to the living room with a handgun, pointed it at her, and fired, hitting her in the hand. Dorelus immediately retrieved a towel for her, and he drove her to the emergency room. He stayed with her at the hospital for a short time but then left. Once he was gone, she told hospital personnel what had happened, and they alerted the police. An ensuing search of Dorelus' residence revealed blood and a bullet fragment by the sofa where Dorelus' wife testified that she had been sitting when she was shot, but no firearm.

---

[1]Dorelus was also charged by second amended information with one count of tampering with a witness and two counts of violating his pretrial release. While these additional charges are irrelevant to the issues presented in this case, we note that the State subsequently dismissed the tampering charge.

Dorelus was arrested the next day, but no firearm was found in either his possession or in the car he was driving. Dorelus waived his Miranda[2] rights and gave a videotaped statement to the police, which the State played for the jury. In that statement, Dorelus stated that he returned home from a barbeque with friends to find a man with one gold tooth leaving his home. When Dorelus confronted the man, the man made a statement indicating that he had been intimate with Dorelus' wife. When Dorelus' wife approached the open door to the house, a scuffle between the two men ensued. During the scuffle, the gold-toothed man pulled a handgun from the waistband of his pants. Dorelus said that he tried to grab the man's hand to get the gun away from him and that in the struggle "one shot went off." Dorelus later reiterated that the man had the gun and "when he started firing, I pushed him and went inside." It was then that Dorelus discovered that his wife had been shot. He grabbed a towel to wrap around her hand and drove her to the hospital. Dorelus said in his statement that he and his wife argued in the car about the gold-toothed man and that his wife threatened that if he did not stop arguing with her, she would blame him for the injury. When this argument continued at the hospital, Dorelus left.

At the close of all evidence, the trial court instructed the jury on the offenses of aggravated battery with a firearm causing great bodily harm, felony battery, battery, and improper exhibition of a firearm. The State did not object to the instructions on any of these lesser offenses. The jury subsequently acquitted Dorelus of both the charged offense and all of the lesser offenses.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Shortly thereafter, the State proceeded to trial on the previously severed charge of felon in possession of a firearm. At that trial, the State again called Dorelus' wife to testify, and her testimony was substantially identical to that presented at the earlier trial. At the close of the case, the jury found Dorelus guilty of felon in possession of a firearm.

In this appeal, Dorelus argues that his conviction and sentence for felon in possession of a firearm should be reversed because the State was collaterally estopped from prosecuting him on that charge after he was acquitted of the related charge of aggravated battery in the earlier trial. On the facts presented here, we agree.

The doctrine of collateral estoppel in the context of a criminal charge arises from the Fifth Amendment guarantee against double jeopardy, but it arises only in a fairly limited set of factual and procedural circumstances. As this court has explained, "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment in a criminal case[,] it cannot be again litigated between the same parties." State v. Short, 513 So. 2d 679, 681 (Fla. 2d DCA 1987) (citing Ashe v. Swenson, 397 U.S. 436 (1970)). For the doctrine to apply, "the fact sought to be foreclosed must necessarily have been determined in the defendant's favor; it is not sufficient that the fact might have been determined in the first trial." Id. (citing United States v. Irvin, 787 F.2d 1506 (11th Cir. 1986)) (emphasis added); see also Gragg v. State, 429 So. 2d 1204, 1206 (Fla. 1983) (holding that the pertinent question when dealing with a claim of collateral estoppel is whether the factual issue was actually decided by the prior jury in reaching its verdict); State v. Strong, 593 So. 2d 1065, 1067 (Fla. 4th DCA 1992) (holding that the doctrine of collateral estoppel "precludes the

government from relitigating certain facts in order to establish the fact of the crime, which includes a redetermination of evidentiary facts as well as ultimate facts").  Hence, it is not the fact of the acquittal that is dispositive; it is the factual findings that necessarily underlie that acquittal that are dispositive.

As a procedural matter, the burden is on the defendant to prove by convincing, competent evidence that the jury necessarily determined the fact sought to be foreclosed in the initial trial.  Short, 513 So. 2d at 681.  However, satisfying this burden is hampered by the fact that juries in criminal cases do not generally render special interrogatory verdicts; instead, they return general verdicts of guilty or not guilty. Therefore, "where a previous judgment of acquittal in a criminal case is based upon a general verdict, the court is required to examine the record and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose."  Id. (citing Ashe, 397 U.S. at 444).  In conducting this examination, courts are guided by the Supreme Court's admonition that

> the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."  The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."

Ashe, 397 U.S. at 444 (citations and footnote omitted).  Therefore in this case, we must examine the record of Dorelus' aggravated battery trial to determine whether that jury

necessarily found that Dorelus did not possess a firearm so as to preclude the subsequent prosecution for the offense of felon in possession of a firearm.

The evidence adduced at the first trial was set forth above. In instructing the jury on the aggravated battery charge, the trial court told the jury that the State could prove its case by proving that Dorelus intentionally touched or struck his wife while using a deadly weapon and that he caused her great bodily harm. The court also instructed the jury on the lesser-included offenses of battery and improper exhibition of a firearm. In instructing the jury on the improper exhibition charge, the trial court explained that the State could prove its case by proving that Dorelus "had or carried a firearm" and exhibited it in a rude, careless, angry, or threatening manner in the presence of another person. In rejecting both of these charges and acquitting Dorelus, the jury necessarily had to reject his wife's testimony and conclude that Dorelus had not "had or carried" a firearm. There is simply no other rational basis for the jury's verdict acquitting Dorelus given the evidence presented at trial. Had the jury believed that Dorelus held or possessed the gun but did not shoot his wife, it should have found him guilty of improper exhibition of a firearm. By acquitting him of that charge, the jury necessarily concluded that Dorelus did not "have or carry" a firearm. And because a rational jury necessarily made this factual finding in reaching its verdict in the aggravated battery trial, the subsequent prosecution of Dorelus for felon in possession of a firearm was barred by the doctrine of collateral estoppel.

This result, while uncommon, is not unprecedented. For example, in Davis v. State, 645 So. 2d 66, 67 (Fla. 4th DCA 1994), the defendant was charged with aggravated assault by pointing a handgun, carrying a concealed weapon, resisting

arrest without violence, and felon in possession of a firearm. The court severed the felon in possession charge, and the defendant went to trial on the charges of aggravated assault, carrying a concealed weapon, and resisting without violence. Id. At trial, two police officers testified that as the defendant fled from them, he pulled a handgun from beneath his clothing and pointed it directly at them. Id. The defendant admitted to being at the scene, but he denied having a gun. Id. The trial court instructed the jury not only on the charged offenses, but also on the lesser offenses of assault and improper exhibition of a firearm. Id. The jury acquitted the defendant of all charges, including the lesser offenses that involved a gun and specifically the lesser offense of improper exhibition of a firearm. Id.

Despite this acquittal, the State sought to prosecute the defendant on the felon in possession charge. Id. He moved to dismiss the charge, which motion was denied. Id. The defendant was thereafter convicted on that charge, and he appealed. Id. In reversing on collateral estoppel grounds, the Fourth District reasoned:

> If the jury had simply based its acquittal on the aggravated assault charge on its belief that defendant was more concerned with escape than threat, it had the option of finding defendant guilty of improper exhibition of a firearm if it believed the officers' testimony. A verdict of not guilty on this lesser offense as well leads us to the inescapable conclusion that the jury necessarily decided that defendant did not possess a firearm.

Id. at 68. Based on the evidence presented at trial, the court held that the prior jury's rejection of all the charges and possible lesser offenses necessarily meant that the jury had determined that the defendant did not possess a gun, and it reversed the conviction for felon in possession and remanded for discharge. Id.

This case is almost factually indistinguishable from <u>Davis</u>. Like the jury in <u>Davis</u>, if the jury here did not believe that the State proved the intent element of aggravated battery, it had the option of finding Dorelus guilty of improper exhibition of a firearm. The jury's rejection of that charge leads us, as it did the Fourth District in <u>Davis</u>, to the inescapable conclusion that the jury necessarily determined that Dorelus did not have or possess a firearm, and this determination precludes his subsequent prosecution for felon in possession of a firearm as a matter of law.

In this appeal, the State contends that this argument was not sufficiently preserved by defense counsel's oral motion in limine which sought to preclude the State from introducing any testimony from Dorelus' wife in the felon in possession trial concerning her version of events because the jury had necessarily rejected that version by acquitting Dorelus in the earlier trial. Instead, the State contends that Dorelus was required to file a motion to dismiss in order to preserve this issue. See <u>Suiero v. State</u>, 248 So. 2d 219, 221 (Fla. 4th DCA 1971) (holding that the defendant's failure to raise the defense of collateral estoppel in the trial court waived that defense). We reject this contention.

While we agree that the better practice would have been to raise this issue in a motion to dismiss, we note, however, that the doctrine of collateral estoppel implicates a fundamental right that arises from the Fifth Amendment guarantee against double jeopardy. See <u>Ashe</u>, 397 U.S. at 445. It is inconsistent with both the double jeopardy clause and the notion of a fair trial for the State to force the defendant to essentially stand trial for and resurrect his defenses to a charge of which he has already been acquitted. Cf. <u>Diaz v. State</u>, 609 So. 2d 1337, 1341 (Fla. 3d DCA 1992)

(concluding that it is fundamentally unfair to a defendant to allow the State to present evidence at a subsequent trial of crimes for which the defendant was acquitted at an earlier trial). And a double jeopardy violation constitutes fundamental error that may be raised for the first time on appeal—pleading niceties notwithstanding. See, e.g., James v. State, 61 So. 3d 492, 493 (Fla. 2d DCA 2011); Safrany v. State, 895 So. 2d 1145, 1147 (Fla. 2d DCA 2005) ("[A] 'violation of double jeopardy principles is fundamental error which, absent a knowing and voluntary waiver, may be raised for the first time on appeal.' " (quoting Hunsicker v. State, 881 So. 2d 1166, 1169 (Fla. 5th DCA 2004))); Hunt v. State, 769 So. 2d 1109, 1110 (Fla. 2d DCA 2000). Hence, the issue here is one of fundamental error, which could be properly raised for the first time in this appeal.

For all of these reasons, we reverse Dorelus' conviction and sentence for felon in possession of a firearm and remand for discharge.

Reversed and remanded.

CASANUEVA and LaROSE, JJ., Concur.