738 So.2d 1020 (1999)
Dwayne GRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 97-4204.
District Court of Appeal of Florida, Fourth District.
August 18, 1999.
Richard L. Rosenbaum of Law Offices of Richard L. Rosenbaum, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Elaine L. Thompson, Assistant Attorney General, West Palm Beach, for appellee.
*1021 GROSS, J.
At about 8:30 p.m. on an October evening, Detectives MacDougall and Fuller observed appellant Dwayne Grant and co-defendant Tony Davis standing beside a business known as Cooper's Sundry. The officers were positioned on a roof across the street. Both officers used binoculars to view the scene.
They observed Davis holding a clear plastic bag containing a light colored, powdery substance. Davis handed the bag to Grant, who brought it to his nose. Grant then walked to the east side of Cooper's Sundry, where a white pipe protruded from the wall. Grant pulled the pipe back, placed the baggie in between the wall and the pipe, and then replaced the pipe to conceal the baggie.
A Ford Explorer soon parked nearby. A woman got out of the vehicle, went up to Grant and had a short conversation with him. Grant then walked to a mailbox and pulled out a paper bag. From the paper bag, Grant removed a large, clear plastic bag, reached in, and grabbed a small plastic baggie containing a white, powdery substance. He put the larger bag back into the paper bag, which he returned to the mailbox. Grant walked back to the woman and gave her the smaller baggie in exchange for an unknown amount of money.
A man later approached Davis and had a brief conversation with him. Davis removed the paper bag from the same mailbox as Grant, and exchanged another small plastic baggie for money. Davis conducted similar transactions with two other men.
After the fourth apparent drug sale, the detectives on the rooftop alerted other officers, described Grant and Davis, and told them to arrest the two men. Cocaine weighing 52.4 grams was recovered from the mailbox and $684.00 was taken from Grant.
Grant was the only defense witness. He testified that on the day of the arrest, he went into Cooper's Sundry after work, played pool, and ate. He walked outside and began talking to Davis. Just then, the police came up and ordered Grant, Davis, and several other people to the ground. Grant contended that he had not gone to the mailbox, taken out cocaine, and given it to anyone.
We write primarily to address one issue. The state introduced in evidence photographs of the crime scene taken during daylight from the detectives' vantage point on the rooftop. The photographs were taken two weeks before trial. Grant's attorney objected on the basis that a discovery violation had occurred. Although "photos" were generically listed in the state's discovery response, Grant's counsel contended that the photos at issue were not included in the materials the state supplied to him. The state argued that it had notified the defense that the photos were available for inspection and had shown the photos to the defense prior to trial. The trial court overruled the objection without conducting an inquiry pursuant to Richardson v. State, 246 So.2d 771 (Fla.1971).
Grant's defense at trial was mistaken identity. He argues in his brief that the state's discovery violation "annihilated any chance the defense had to have its own photos taken or to subpoena and compel the attendance of witnesses who could have better explained the actual surroundings, physical location, and obscured visibility which the officers would have had."
Failure of the trial court to conduct a Richardson inquiry is harmless error if "the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation." State v. Schopp, 653 So.2d 1016, 1021 (Fla.1995). The defense is "procedurally prejudiced" by a discovery violation "if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." Id. at 1020; Lopez v. State, 711 So.2d 563, 564 (Fla. 2d DCA 1997). The "potential prejudice involved in discovery violations is the risk of surprise on the opposing party and *1022 an inability to adequately prepare for trial." Norton v. State, 709 So.2d 87, 96 (Fla.1997).
Applying Schopp and Norton, we find the failure to conduct a Richardson hearing in this case to be harmless error. From the inception of this case, Grant's defense was that the detectives viewing the scene from the rooftop across the street were mistaken in their observations concerning him. The focus of any impeachment of the officers was to show a "defect of capacity, ability, or opportunity" to observe Grant's supposedly incriminating conduct. See § 90.608(4), Fla. Stat. (1997). Grant was well aware of the layout of the area near Cooper's Sundry prior to the state's introduction of the photos into evidence. See Norton, 709 So.2d at 96. The photographs did not depict the crime scene in a manner not already known by the defense. See id. Grant's need for his own photographs or witnesses to describe the area was not created by the state's introduction of photos, but by the nature of his defense, which crystallized at the moment of his arrest.
This case is distinguishable from cases where we have found harmful error under Schopp. In Loisell v. State, 703 So.2d 534 (Fla. 4th DCA 1997), the discovery violation concerned the defendant's oral statement to a detective, which necessitated a change in strategy between the defense attorney's opening statement and closing argument. Mobley v. State, 705 So.2d 609 (Fla. 4th DCA 1997), involved the state's disclosure of a new eyewitness to an aggravated battery after the jury had been sworn; the identity of the state's witnesses to a disputed crime was central to the defense decision of what witnesses to call to fashion a defense. Additionally, the untimely disclosure of the witness in Mobley deprived the defendant of the ability to develop impeachment and rebuttal testimony. See id. at 611. Obviously, no such testimony could be developed until the defendant knew both the identity of the witness and what the witness was going to say.
Grant also argues that it was reversible error for the court to admit the three photographs of the area near Cooper's Sundry because the photos were taken one year after the incident during the daylight, when the crime occurred at night. "The law is clear that the trial court has discretion, absent abuse, to admit photographic evidence so long as the evidence is relevant." Thompson v. State, 565 So.2d 1311, 1314 (Fla.1990).
There was no abuse of discretion in this case. The defense did not identify a change in the area in the year after the crime which would have made the photographs so misleading that their admission would justify a reversal. Jurors are not potted plants. They are capable of appreciating the photographs for their geographical value, while comprehending the significance of photos taken during the day when called on to evaluate events that occurred at night. The defense was fully capable of exploring any deficiencies in the photographs on cross examination of the detectives.
We find no error in the court's ruling on the state's peremptory challenges, see Davis v. State, 24 Fla. L. Weekly D1389, 736 So.2d 27 (Fla. 4th DCA 1999), the admission of the cocaine into evidence, or the giving of the principal instruction.
AFFIRMED.
STONE, C.J., and WARNER, J., concur.