778 So.2d 414 (2001)
STATE of Florida, Appellant,
v.
Glendell RUSS, Appellee.
Nos. 1D99-4378, 1D00-243.
District Court of Appeal of Florida, First District.
February 2, 2001.
Rehearing Denied March 2, 2001.
Robert A. Butterworth, Attorney General; Trisha E. Meggs, Assistant Attorney General, Tallahassee, for Appellant.
Edward S. Stafman, of Edward S. Stafman, P.A., Tallahassee, for Appellee.
MINER, J.
The State appeals an order granting appellee Russ's motion for judgment of acquittal notwithstanding the verdict of guilty on the charge of official misconduct. In addition, Russ cross-appeals from his conviction and sentence for petit theft. For the reasons set out below, we reverse the order granting the judgment of acquittal but affirm Russ's cross-appeal without further discussion.
Glendell Russ, a then-City Commissioner in Quincy, Florida, was charged by information with official misconduct and petit theft. The evidence presented at trial demonstrated that in 1998-99 each Quincy city commissioner had a discretionary fund of City money available for his/her official use. In December 1998, Russ requested that the City Commission authorize the expenditure of $600 from his discretionary fund to purchase Christmas gifts for needy children in his district, and the commission agreed. Rebuffing the city manager's suggestions that the money be spent in Quincy or be given to a charity, such as Toys for Tots in order to avoid any appearance of impropriety, Russ directed that the check be made payable to Toys-R-Us, where he said there was more variety in toy selection. Pursuant to its established procedures, the City Clerk then caused the requested check to be issued and gave it to Russ. Such checks when negotiated are endorsed by the payee debited by the bank against the account on which it was drawn, canceled, and returned and retained as City financial records.
On December 15, 1998, Robert Barkley, Jr., was shopping at Toys-R-Us in Tallahassee for some toys for his little girl. He had three items in his shopping cart, totaling approximately $159 in retail value. As he neared the checkout counter, Glendell Russ, whom he did not know, approached him, put his hand on Barkley's cart, and proposed that Barkley give him $100 cash *415 in return for Russ's purchasing Barkley's toys for him. Barkley inquired why Russ would do this since Barkley's purchases well exceeded $100. Russ responded that he was head of a charitable organization and was buying toys for needy children in his district. Russ claimed that he was tired from shopping but had not reached his expenditure limit. He told Barkley to consider it his "lucky day." Barkley handed Russ a $100 bill, which Russ pocketed, and Russ then purchased all of the toys in his and Barkley's shopping carts, totaling approximately $599, with the check authorized by the Quincy City Commission. Barkley agreed to help Russ take the purchases to Russ's car. Once in the parking lot, Barkley inquired further regarding the organization Russ claimed to represent. Russ responded that he was Glendell Russ, a Quincy City Commissioner, and that he worked for a charity. At this point, Barkley introduced himself and said that his father was Robert Barkley, Sr., the former police chief in Quincy whose tenure had recently been terminated by the Quincy City Commission. Russ looked startled, dropped the bag of toys in his hand, and began to stutter that he had nothing against Barkley's father. Barkley then realized that Russ was one of the city commissioners who had voted to terminate his father's employment and against whom his father had filed suit regarding such termination. The next day Russ sent his ex-wife to a different store in Tallahassee to purchase up to $200 in children's toys and clothing.
The jury found Russ guilty of both petit theft and official misconduct. In his motion for judgment of acquittal and judgment of acquittal notwithstanding the guilty verdict, Russ argued that the state failed to present a prima facie case on the official misconduct charge. After a hearing, the trial court issued a lengthy order in which it concluded that the state's theory on the statutory meaning of the word "falsify" lacked an evidentiary basis on the facts of the case. The court thus set aside the verdict of guilty on the charge of official misconduct.
Official misconduct, a violation of section 839.25, Florida Statutes, is a third degree felony defined as follows:
(1) "Official misconduct" means the commission of the following act by a public servant, with corrupt intent to obtain a benefit for himself or herself or another or to cause unlawful harm to another: knowingly falsifying, or causing another to falsify, any official record or official document.
(2) "Corrupt" means done with knowledge that act is wrongful and with improper motives.
The state's theory of the case against Russ was that he falsified the check within the meaning of the statute by submitting the City's check, an official document, to Toys-R-Us, thereby misrepresenting to the City that he had purchased $600 worth of toys for children in Quincy when in fact he had purchased only $440 worth of toys for Quincy children and $159 worth of toys for Barkley, a Tallahassee resident, and had pocketed $100 in cash. Russ contends that the mere negotiation of a public check, even if done in an unauthorized manner, does not constitute falsification of that check within the meaning of the official misconduct statute. The check must be altered, modified, or had false information placed upon it to fall within the ambit of the statute, he argues, and thus there was no evidence the check was falsified in this case.
The legislature did not define "falsify" as used in the statute, and only one Florida case has addressed its meaning.
In Pou v. Ellis, 66 Fla. 358, 63 So. 721 (1913), the defendant was charged under a predecessor statute with falsifying voter registration books by entering names of people actually not qualified to vote. That statute provided that no person "shall corruptly falsify or avoid any record ... or shall fraudulently alter, deface or falsify any minutes, documents, books or any proceedings *416 whatever, of, or belonging to any public office." Id. at 722 (citing § 3483, Gen.Stat. (1906)). Pou argued that his actions did not fall within the contemplation of the statute, and the court responded as follows:
We are left to decide this question without the aid of authority, as none is cited to us, and we have found none. One of the definitions of the word "falsify" in Webster's International Dictionary, is "to tamper with, as to falsify a record of [sic] document." It seems to us that to add names improperly to a registration book kept for the purpose of showing who are properly registered voters is, within the meaning of the statute, a falsification of the record.
Id. at 722-23. Thus, absent any legislative guidance, the court merely applied the ordinary definition of the word to the facts of the case and upheld Pou's conviction. The court did not undertake to define the full parameters of "falsify" and the application of this statute.
In the case at hand, the state also relies on the dictionary definition of the word "falsify" for its contention that Russ's act of misrepresentation constituted falsification of the City's check. Webster's New Collegiate Dictionary defines "falsify" as follows:
1. to prove or declare false. 2. to make false: as a: to make false by mutilation or addition falsified to conceal a theft> b: to represent falsely: MISREPRESENT 3: to prove unsound by experience -vi: to tell lies: LIE syn see MISREPRESENT.
Although case law indicates that prosecutions for official misconduct usually involve a defendant who physically changes or modifies an official document or who makes a false entry on an official document, see, e.g., Harnum v. State, 384 So.2d 1320 (Fla. 2d DCA 1980); Barr v. State, 507 So.2d 175 (Fla. 3d DCA 1987), this does not mean that the statute does not encompass the factual scenario presented in a case such as this.
First, the common dictionary definition includes "misrepresentation" and does not require a physical alteration of a document, although that is given as an example. Here, it is undisputed that the $600 check in this case was in no way physically altered by Russ. When the check was negotiated, however, the check misrepresented the underlying facts related to the purpose for which it was issued in the first instance. This circumstance is akin to those in Brown v. State, 689 So.2d 1165 (Fla. 4th DCA), review denied, 698 So.2d 839 (Fla.1997). So that the City of Margate could calculate his pay, Brown, a city employee, filed a time card punched by a timeclock that indicated that he began work at 10:30 p.m. one evening. At trial, the state showed that he did not actually start work until 3:00 a.m., and Brown was convicted of official misconduct on the theory that the time card was falsified. On its face, however, the time card was accurate; i.e., it reflected the time at which the card was punched. What was not apparent on the face of the card was the underlying fact that the time stamp did not reflect Brown's actual starting time. Brown thus falsified the time card by causing the time stamp on the card to be false. In the case at hand, the city check was made out for $600 in accordance with Russ's direction, and the expenditure of that $600 was authorized for needy Quincy children. Russ negotiated the check for the full amount, but he was actually using $159 of the City's money to purchase toys for Barkley so that he, Russ, could pocket $100. Thus, by actually negotiating the check for $600 but using a significant part of that amount for his own profit rather than for the authorized purchase of toys for needy Quincy children, he caused that check to misrepresent the actual amount spent for its authorized purpose.
In accordance with its ordinary meaning, therefore, the word "falsify" as used in section 839.25 does include "misrepresent," *417 and there was no failure of evidence in the case below as determined by the trial court. We reverse the court's order granting Russ's motion for judgment of acquittal notwithstanding the verdict and reinstate that verdict. Accordingly, this case is remanded for entry of judgment and imposition of sentence on the official misconduct charge. As previously noted, we also affirm Russ's conviction and sentence for petit theft.
BOOTH, J., concurs.
KAHN, J., concurs in part, dissents in part with opinion.
KAHN, J., concurring in part and dissenting in part.
I agree with the majority that appellee's cross appeal must be affirmed. Because the evidence in this case is insufficient to support a conviction on the charge of official misconduct, I must dissent as to the remainder of the majority opinion.
The only Florida Supreme Court case addressing the meaning of the term "falsified" in the context of a statute making it a crime to falsify any record is Pou v. Ellis, 66 Fla. 358, 63 So. 721 (1913). As the majority acknowledges, the Supreme Court in that case utilized the Webster's Dictionary definition of the word "`falsify,'" stating that definition as "to make false by mutilation or addition; to tamper with, as to falsify a record or [sic] document." Id. at 723. In this case, Russ presented a check to Toys-R-Us exactly as the check was officially issued. Although he apparently had a secret intention to profit by purchasing less than $600 worth of toys, such is not tantamount to falsifying an official record or document. Instead, such action by Russ is the gravamen of his conviction for theft, which we today affirm.
No reported Florida case has been brought to our attention in which a conviction for official misconduct was sustained absent evidence that the document at issue was altered, changed or modified in some way. See State v. Riley, 381 So.2d 1359 (Fla.1980)(involving a police officer who incorporated false statements into an official police report); Diaz v. State, 609 So.2d 1337 (Fla. 3d DCA 1992)(involving a police officer who incorporated false statements into an official police report); Bauer v. State, 609 So.2d 608 (Fla. 4th DCA 1992)(involving city employee who recorded financial losses in the city journal as assets); Barr v. State, 507 So.2d 175 (Fla. 3d DCA 1987)(involving a police officer who incorporated false statements into a official police report); State v. Short, 483 So.2d 10 (Fla. 2d DCA 1985)(involving sheriff who falsely wrote on official letterhead that an individual was employed by sheriffs office in order to get the individual a job); Harnum v. State, 384 So.2d 1320 (Fla. 2d DCA 1980)(finding that a police officer who ordered another officer to change a breathalyzer result had falsified a document).
In extending the Pou definition, the majority relies, I suggest mistakenly, upon Brown v. State, 689 So.2d 1165 (Fla. 4th DCA 1997) rev. denied 698 So.2d 839 (Fla. 1997). For two reasons Brown does not support reversal here. First, no issue of falsification was raised in Brown. Indeed, the only issue raised by the appellant in Brown was "the official misconduct conviction must be reversed because the time card was not an `official record or official document' within the meaning of section 839.25(1)." Id. at 1166. In a very brief opinion, the Fourth District decided that a public servant's time card is an official record within the meaning of the statute, but the court never addressed the question of whether the card at issue had been falsified. See id. Second, the facts related in Brown are not contrary to the definition adopted by the Supreme Court in Pou. Mr. Brown caused a false starting time to be imprinted on his time card. Such is consistent with the Pou definition because Brown made the card false by adding to it a time other than the time he *418 actually began to work. Nothing of the sort happened in the present case.
Even assuming the correctness of the majority's determination that the term "falsify", as used in section 839.25(1), includes "misrepresent," the trial court's decision should still be affirmed. Mr. Russ represented the document as a $600 check drawn on the Treasury of the City of Quincy. This is in fact what the check was at the time Mr. Russ negotiated the check at Toys-R-Us, and at the time the check presumably found its way into the City's records.
I have no doubt that Russ was guilty of official misconduct in the generic sense. The crime of official misconduct, as codified in Section 839.25(1), Florida Statutes (1997), is, however, very specific and requires not simply official or corrupt misconduct by a public servant, but knowing falsification of an official record or document. However reprehensible Mr. Russ' actions or intentions were, he did not commit the statutory crime. I would therefore affirm the trial court's order granting judgment of acquittal on that charge.