801 So.2d 982 (2001)
Peter J. AURIGEMMA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-2575.
District Court of Appeal of Florida, Fourth District.
December 12, 2001.
*984 Benedict P. Kuehne of Sale & Kuehne, P.A., Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Donna L. Eng, Assistant Attorney General, West Palm Beach, for appellee.
OWEN, WILLIAM C., JR., Senior Judge.
Appellant's brief begins with the statement "life as Peter Aurigemma knew it turned upside down on May 28, 1998." It was on that date Mr. Aurigemma, the appellant, a deputy sheriff with an exemplary service record in undercover narcotics investigation, prepared and submitted a written offense report of having made, on the previous day, a cocaine purchase from the manager of a bar on the bar's premises. From the evidence, both substantial and competent, albeit circumstantial, a jury found the report was a fabrication. As a consequence, appellant was convicted on the felony charge of official misconduct, and the misdemeanor charge of false reporting of a non-existent crime. Appellant's principal issue on this appeal is that the court erred in denying his motion for judgment of acquittal on the ground that the evidence was legally insufficient to support the verdicts. Concluding that no error has been shown, we affirm.
Appellant had been involved in an undercover investigation of T.J. Murphy's Bar and Grill ("the bar"), and had made a series of cocaine buys on the premises from the bar's manager during the months of April and May, 1998, the most recent of which had been on May 14. Using appellant's affidavit of those buys as probable cause, the sheriffs office had obtained a search warrant for the premises which it planned to execute on the evening of May 28.
Sergeant Carol Owsiany of the Division of Alcoholic Beverages and Tobacco ("the ABT") learning of the sheriffs planned search of the bar premises, contacted appellant on May 26. She (Sergeant Owsiany) informed him that the ABT wanted to obtain a closure order which would allow the ABT to close down the bar; furthermore, she wanted to obtain the order in time to serve it on May 28, simultaneously with the sheriffs planned execution of the search warrant. She insisted, however, that the ABT would not be able to obtain such an order on an emergency basis without having evidence of a purchase more recent than May 14 to support the application. *985 Consequently, she implored appellant to make a "fresh buy" from the bar manager, either that day or the next so she could timely secure the closure order. Appellant, anxious to see the bar closed, agreed he would attempt to make another cocaine purchase. On May 28, he delivered to Sergeant Owsiany a copy of his written report describing the details of a cocaine buy he had made at the bar from the manager shortly after 5:30 P.M. of the preceding day, May 27.[1] Based on that report, Sergeant Owsiany immediately obtained an emergency order to close down the bar.
As planned, on the evening of May 28, the ABT officers, armed with a closure order, and the sheriff's deputies, with search warrant in hand, arrived en masse at the bar only to discover their efforts had been for naught. They found T.J. Murphy's Bar and Grill closed down and, from the writ of possession posted on the front door of the premises, it was apparent that the premises had been closed since the morning of May 26.
On the latter date, a deputy sheriff, accompanied by the property manager, had come to the premises to post the writ as a result of the landlord's eviction proceedings. They found the exterior doors to the bar locked. The property manager called a locksmith to gain entry. Upon entering, he noticed dirty glasses with unmelted ice on the bar, beer holders with ice in them, dirty ashtrays, full garbage cans, and the kitchen in disarray. The property manager arranged to have all of the locks changed that day. On the following day, May 27, the electrical service to the bar was disconnected at 3:00 P.M. When the property manager returned to the bar on May 28 to show the premises to a prospective tenant, the bar looked exactly the same as it had two days before, except that there was no electrical power and all the ice had melted. All the doors were secured and locked, and there was no sign of forced entry.
Appellant was charged with the felony offenses of unlawful possession of cocaine and official misconduct, and the misdemeanor offense of false reporting of a nonexistent crime. The jury acquitted him of the charge of unlawful possession of cocaine, but found him guilty as charged on the other two counts. The theory of the state's case was simply that appellant, anxious to comply with the ABT demand for evidence of a fresh cocaine buy from the bar's manager, falsely reported making such buy on the bar's premises, at a time when the bar was closed and the buy could not have occurred as reported. To meet its burden of proof, the state relied solely on circumstantial evidence.
To be guilty of official misconduct, a public servant must knowingly falsify, or cause another to falsify, an official record or document, acting with corrupt intent, that is, done with knowledge that the act is wrongful and with improper motives, to obtain a benefit for himself or herself or another or to cause unlawful harm to another. § 839.25(1) and (2), Fla. Stat. (1997). *986 See also Bauer v. State, 609 So.2d 608, 609-10 (Fla. 4th DCA 1992).
To be guilty of false reporting of a nonexistent crime, one must willfully impart, convey, or cause to be imparted or conveyed to a law enforcement officer false information or reports concerning the alleged commission of a crime, knowing such information or report is false, in that no such crime has actually been committed. § 817.49, Fla. Stat. (1997).
Appellant's principal point is that the court erred in denying his motion for judgment of acquittal on the charges of official misconduct and false reporting of a non-existent crime. A judgment of acquittal is proper only when, after viewing the evidence as if the defendant admitted every fact stated and every conclusion that reasonably may be inferred, the evidence is such that a jury could not lawfully find for the state. Scott v. State, 693 So.2d 715, 716 (Fla. 4th DCA 1997)(citing Taylor v. State, 583 So.2d 323 (Fla.1991)). When evidence of guilt is purely circumstantial, as it was in this case, a conviction is proper only if the evidence is consistent with guilt and inconsistent with any reasonable hypothesis of innocence. State v. Law, 559 So.2d 187, 188 (Fla.1989).
Recognizing that the state's evidence may have been consistent with guilt, appellant argues here, as he did in the trial court, that the state's evidence failed to exclude the defendant's reasonable hypothesis of innocence, i.e., that the cocaine purchase indeed took place as he described in his offense report. He argues, for example, that there was no evidence which would exclude the likelihood that on May 27 the bar manager, ignoring the posted writ of possession, obtained a key to the new locks and, as he regularly had done in the past, opened the bar for business and to carry on his drug transactions. Nor, continues appellant, did the state show evidence that all of the locks had, in fact, been changed, despite the property manager's order, so as to rule out the possibility that the former bar manager entered the premises on May 27 with his own key. While it is correct that the state did not offer evidence to prove those or similar matters argued by appellant, the state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence; rather, the state need only introduce competent evidence which is inconsistent with the defendant's theory of events. Law, 559 So.2d at 189; Arroyo v. State, 705 So.2d 54, 56 (Fla. 4th DCA 1997). Once that threshold burden is met to the trial court's satisfaction, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. Law, 559 So.2d at 189.
With due appreciation for the art of advocacy, we nonetheless conclude that the evidentiary failures asserted by appellant do not undermine the sufficiency of the state's evidence summarized above. From that evidence, a jury could reasonably find that from the time the locks were changed on May 26, no one other than the property manager had access to the premises and, from that time until the property manager returned to the premises with a prospective tenant on May 28, no one was inside the premises; that the details and circumstances of the drug buy as reported by appellant were totally implausible and the drug buy as reported could not have occurred on the premises at 5:30 P.M. on May 27; and that appellant falsified his report of that drug buy for the purpose, and with the intent, that Sergeant Owsiany rely upon it to obtain an emergency closure order. The state met its burden to introduce competent evidence inconsistent with appellant's hypothesis of innocence. *987 The trial court properly denied appellant's motion for judgment of acquittal, leaving to the jury the question of whether the evidence was sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Appellant argues that, even if the evidence supports a finding that appellant falsified the report, the state's evidence fails to show that appellant acted with any corrupt intent to obtain a benefit for himself or another or to cause unlawful harm to another. While there was no proof that appellant acted with corrupt intent to obtain a benefit for himself, the evidence supports a finding that he acted with corrupt intent to benefit the ABT by aiding it in securing an emergency order to close the bar, an action which, because the order was based on a false report, would necessarily cause unlawful harm to the bar's licensee. Appellant argues that his May 28 report did not actually benefit the ABT, nor did it harm the bar's licensee since the ABT could have ordered the bar closed on the basis of his four previous buys in April and May. That argument misses the point. It is not whether someone benefits or someone is harmed by the act, but whether the public servant acted with the corrupt intent that someone obtain a benefit or someone be harmed.
As a separate point, appellant claims the court erred in admitting into evidence, over his objection, a videotape of the bar's interior made significantly after the alleged drug buy, without any assurance that the property shown was in the same condition as of the time of the offense. The trial court has wide discretion concerning the admissibility of photographic evidence and should be reversed only for abuse of discretion. Thompson v. State, 565 So.2d 1311, 1314 (Fla.1990); Dolan v. State, 743 So.2d 544, 546 (Fla. 4th DCA 1999). However, the trial court must be ever mindful that the "artificial recreation of an event may unduly accentuate certain phases of the happening, and because of the forceful impression made upon the minds of the jurors by this kind of evidence, it should be received with caution." Cave v. State, 660 So.2d 705, 708 (Fla.1995)(quoting People v. Dabb, 32 Cal.2d 491, 197 P.2d 1, 5 (1948)). In Grant v. State, the court admitted photographs of a crime scene although they were taken a year after the incident during the day when the crime had occurred at night. 738 So.2d 1020, 1022 (Fla. 4th DCA 1999). It reasoned,
The defense did not identify a change in the area in the year after the crime which would have made the photographs so misleading that their admission would justify reversal. Jurors are not potted plants. They are capable of appreciating the photographs for their geographical value, while comprehending the significance of photos taken during the day when called on to evaluate the events that occurred at night. The defense was fully capable of exploring any deficiencies in the photographs on cross examination of the detectives.
Id.
In the instant case, the videotape was relevant to whether or not Aurigemma could see and conduct a drug transaction in the kitchen area. It was authenticated by the parties' stipulation that, notwithstanding the intervening superficial remodeling, the structural interior and exterior of the premises was substantially the same as on May 27. Any concern over the length of time elapsing between the date of the incident and the date of the taping was cured by this stipulation. There was no evidence that the videotape was unfairly prejudicial or misled the jury in any way. The jurors were informed that the interior had been remodeled and there might have *988 been slight variations in the amount of natural light inside the bar. Further, defense counsel had an opportunity to cross-examine the detective regarding the videotape. As stated in Grant, jurors are capable of appreciating photographs for what they are worth. Accordingly, no abuse of discretion has been shown in admitting the videotape.
Finally, appellant argues that the jury verdict of not guilty on the charge of unlawful possession of cocaine was legally inconsistent with the verdicts of guilty on the other two charges. This, he argues, is because all three offenses depended on the state proving that appellant did not obtain cocaine from the bar manager as appellant had reported. In the first place, as a general rule inconsistent jury verdicts are permitted in Florida, State v. Powell, 674 So.2d 731 (Fla.1996), the exception being a "true" inconsistent verdict, i.e., those in which an acquittal on one count negates a necessary element for conviction on another count. Id at 732-33. The verdicts in this case were not "true" inconsistent verdicts, because neither of the charges of which appellant was found guilty included as a necessary element proof of unlawful possession of cocaine. The court properly denied appellant's motions for judgment of acquittal or for new trial on this ground.
AFFIRMED.
DELL and TAYLOR, JJ., concur.
NOTES
[1] The substance of the report stated that at 5:30 P.M. on May 27th, 1998, appellant, posing as a street level drug buyer, entered the bar, sat on the patron's side of the bar, engaged in conversation with several other bar patrons, and ultimately spoke to the manager who motioned him into the kitchen area. There the manager opened his briefcase inside of which appellant observed a 380 caliber Walter PPKS handgun and a large gallon-type baggie containing a number of small clear plastic baggies. These each contained powder which appellant recognized to be suspected cocaine powder. Appellant gave the manager $35 in exchange for one of the small baggies, the contents of which later field-tested positive for cocaine.