PER CURIAM.
 

 This appeal presents the primary question of whether there was sufficient evidence to sustain convictions for two counts of official misconduct of a city commissioner for filing falsified official conflict forms.
 

 The defendant, Keith Wasserstrom, a former Commissioner for the City of Hollywood, was charged with five counts. The trial court granted a judgment of acquittal for the one count of unlawful compensation, and the jury found him not guilty of two counts of official misconduct emanating from the forms filed by the Mayor of Hollywood, Mara Giulianti. The defendant was found guilty of official misconduct for
 
 *57
 
 two disclosure forms he filed'on March 23, 2004, and July 7, 2004, respectively.
 

 Wasserstrom’s uncle, Arnold Goldman, entered into a contract to sell a sewage system, called Bio-Native Technologies, to local governments. Goldman’s contract stated that he would receive two dollars per ton of sewage that was treated under contracts he procured. Wasserstrom entered into a separate contract with Goldman to provide legal services to Goldman’s company, Normandy Group, in return for 50% of the money that Goldman received for contracts procured in localities other than the City of Hollywood.
 

 The City of Hollywood published a request for proposal (RFP), in which another company was ranked first and Bio-Native was ranked second. Wasserstrom, along with Mayor Giulianti, did not vote in this proposal and filed the required Memorandum of Voting Conflict, Form 8B. However, Normandy Group actively promoted the Bio-Native system to the City of Hollywood, and Wasserstrom publicly advocated for Bio-Native with city administrators and the Hollywood City Commission.
 

 On March 23, 2004, Wasserstrom filed a Form 8B which stated as follows:
 

 My lawfirm [sic] represents a sales representative of one of the RFP responders, Schwing Bioset, on matters other than Bioset’s responce [sic] to the subject RFP. The lawfirm [sic] represents the sales representative, not Bioset, and the relationship accordingly does not constitute a prohibitted [sic] conflict of doing business with one’s agency or a conflicting contractual relationship. Fla. Stat. s. 112.313(3),(7). Furthermore, the lawfirm [sic] does not represent the sales representative in connection with the RFP response, and accordingly, award of the contract to Bioset would not inure to the special private gain of the [sic], Fla. Stat. s. 112.3143. However, I believe that the lawflrm’s [sic] representation of the sales representative in other matters appears to be a possible conflict of interest. Fla. Stat. s. 286.012.
 

 On July 7, 2004, the Wasserstrom filed another Form 8B, which stated the following:
 

 My lawfirm [sic] represents a company (Normandy Group) which as [sic] a contractual relationship with another company (BioNative Technologies), which in turn has a contractual relationship with one of the respondants [sic] to the RFP (Schwing-Bioset), on matters other than Bioset’s response to the subject RFP. The lawfirm [sic] represents the Normandy Group not Bioset, and the relationship accordingly does not constitute a prohibited conflict of doing business with one’s agency or a conflicting contractual relationship. Fla. Stat. s. 112.313(3), (7). Furthermore, the law-firm [sic] does not represent any of these entities in connection with the RFP response, and accordingly, award of the contract to Bioset would not inure to the special private gain of the lawfirm [sic]. Fla. Stat. s. 112.3143. However, on a strictly voluntary basis (AEO 90-55)[sic], I chose to abstain from voting. Fla. Stat. s. 286.012.
 

 At trial, Goldman testified that Wasser-strom would earn money only if the system was sold to other communities. Goldman believed the utilization of the system by the City of Hollywood would not create any direct benefit to Wasserstrom but would help convince other communities in Broward County to contract for the Bio-Native system. The strategy was that if Goldman could sell the system to Hollywood, other cities would follow suit. Was-serstrom would then make money from the contracts with other localities, such as Fort Lauderdale, Pembroke Pines, or Cor
 
 *58
 
 al Springs. Goldman also said that Was-serstrom did not want to put any “more” pressure on the City of Hollywood’s utility director to purchase Bio-Native. In an email dated September 2004, Wasserstrom indicated he believed his law firm and his uncle’s company should be paid $50,000 for work already done.
 

 ANALYSIS
 

 Judgment of Acquittal
 

 We review a motion for judgment of acquittal de novo.
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). On a defendant’s motion for judgment of acquittal, the defendant admits all facts introduced into evidence as true, and the court views all inferences in the light most favorable to the State.
 
 Maglio v. State,
 
 918 So.2d 369, 374 (Fla. 4th DCA 2005). If a rational trier of fact could find the existence of the elements of the charged crime beyond a reasonable doubt, “substantial” evidence exists to sustain the conviction, and a judgment of acquittal is not appropriate.
 
 Id.; Aurigemma v. State,
 
 801 So.2d 982, 986 (Fla. 4th DCA 2001). The jury is charged with weighing the credibility of evidence, so the fact that the evidence is
 
 contradictory
 
 is not grounds for a judgment of acquittal.
 
 Williams v. State,
 
 967 So.2d 735, 755 (Fla.2007). A motion for judgment of acquittal should only be granted where “there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.”
 
 Mosley v. State,
 
 — So.3d—, —, 2009 WL 2045387, 34 Fla. L. Weekly at S468, S473 (Fla. July 16, 2009) (quoting
 
 Williams,
 
 967 So.2d at 755).
 

 Where the “State’s evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant’s reasonable hypothesis of innocence.”
 
 Pagan,
 
 830 So.2d at 803. In a case where the State presents both direct and circumstantial evidence, however, the court does not apply the “special standard of review applicable to circumstantial evidence cases.”
 
 Mosley,
 
 — So.3d at —, 34 Fla. L. Weekly at S473 (citing
 
 Pagan,
 
 830 So.2d at 803).
 

 Wasserstrom was convicted of official misconduct in violation of section 838.022(l)(a), Florida Statutes (2004), which makes it “unlawful for a public servant, with corrupt intent to obtain a benefit for any person or to cause harm to another,” to “[f]alsify, or cause another person to falsify, any official record or official document.” Thus, to establish a prima facie case of official misconduct, the State had to present evidence sufficient to establish that Wasserstrom: (1) was a public servant, (2) acted with corrupt
 
 [1]
 
 intent, (3) acted to obtain a benefit
 
 [2]
 
 for any person, and (4) falsified an official record or document.
 

 On appeal, Wasserstrom argues that the two disclaimers that the “lawfirm [sic] does not represent the sales representative in connection with the RFP response, and accordingly, award of the contract to Bios-et would not inure to the special private gain of the lawfirm” [sic] are true and that the State failed to present evidence inconsistent with this “reasonable hypothesis of innocence.”
 

 
 *59
 
 The State introduced ample evidence of each element of official misconduct such that a reasonable trier of fact could sustain Wasserstrom’s conviction.
 
 [3]
 
 The falsity of the disclaimer and the intended benefit elements of the State’s case are interrelated. At trial, it was undisputed that Wasserstrom would have benefit-ted if
 
 other
 
 jurisdictions contracted to use the Bio-Native system. Goldman testified that securing the City of Hollywood contract would help convince other local governments to contract for the system, and Wasserstrom would be compensated when other jurisdictions accepted those contracts. Because Wasserstrom would have benefitted from other jurisdictions’ contracts for Bio-Native, and because the Hollywood contract would pave the way for such contracts, it was a disputed issue of fact as to whether a benefit would “inure to the special private gain” of Wasser-strom and his law firm. Moreover, the fact that the jury asked for the definition of “inure” indicates that it was focused on the truth or falsity of the disclaimer. The State was required to prove only that Was-serstrom misrepresented the underlying facts on the form.
 
 See State v. Russ,
 
 778 So.2d 414, 416 (Fla. 1st DCA 2001).
 

 Additionally, the State presented evidence that Wasserstrom believed he was entitled to $50,000 in remuneration for services rendered to Bioset after the Hollywood contract had been executed. While this money could have been for services rendered regarding contracts in other jurisdictions, the record was not clear and the determination of the services for which Wasserstrom sought payment was properly presented to the jury. The jury could reasonably have concluded that Wasser-strom sought payment in part for his work on the Hollywood contract. This evidence is sufficient to establish a prima facie claim of both the elements of intended benefit and false statement.
 

 With respect to corrupt intent, the State presented circumstantial evidence from which the jury could have found that Wasserstrom intended to receive $50,000 from his work related to the Hollywood contract. Additionally, the jury could infer that Wasserstrom invited his uncle, who had no experience in the water treatment business, to sign a contract with Bio-Native for the purpose of hiding Wasserstrom’s own relationship with Bio-Native. Finally, the State presented evidence from which the jury could conclude that Wasserstrom inappropriately pressured the utility director to choose Bio-Native over the top-scoring bid in response to the RFP. All of this evidence could give rise to an inference that Wasserstrom drafted his disclosure forms to hide the full extent of his involvement with Bio-Native and the benefit he would eventually receive.
 

 Accordingly, the State presented a pri-ma facie case sufficient to sustain the charge of official misconduct, and the trial court correctly denied Wasserstrom’s motion for judgment of acquittal.
 

 Remaining Issues
 

 With respect to his argument that the verdicts are inconsistent, Wasserstrom argues that his acquittals for unlawful compensation and official misconduct as to two other disclosure forms are inconsistent with his conviction on the remaining two counts of official misconduct. Inconsistent verdicts, however, are permissible.
 
 See Brown v. State,
 
 959 So.2d 218, 220-21 (Fla. 2007). The sole exception to this rule is where “an acquittal on one count negates a
 
 *60
 
 necessary element for conviction on another count.”
 
 Id.
 
 at 221 (quoting
 
 Gonzalez v. State,
 
 440 So.2d 514, 515 (Fla. 4th DCA 1983)). For instance, an acquittal on a felony charge can negate the essential felony element of felony murder.
 
 Brown,
 
 959 So.2d at 221.
 

 To prove official misconduct, the State was not required to demonstrate that Wasserstrom was compensated unlawfully for the Hollywood contract. Instead, the State was only required to show that Wasserstrom had the intent that a benefit would accrue to “anyone” — including (but not limited to) Wasserstrom or his uncle. The fact that Wasserstrom was acquitted of receiving unlawful compensation himself does not negate the fact that he intended a benefit to accrue to “anyone.” Likewise, the fact that Wasser-strom was acquitted of causing Mayor Gi-ulianti to falsify her disclosure forms has no bearing on and is disconnected from the jury’s conclusion that Wasserstrom knowingly falsified his own disclosure forms. As such, we find that the verdicts were consistent and affirm on this ground.
 

 After reviewing the record of the trial court, we conclude that the State presented sufficient evidence for a jury to convict Wasserstrom of official misconduct, and we affirm.
 
 [4]
 

 Affirmed.
 

 DAMOORGIAN, GERBER and LEVINE, JJ., concur.
 

 [1]
 

 . "With corrupt intent" is defined by statute as "acting knowingly and dishonestly for a wrongful purpose.” § 838.014(4), Fla. Stat. (2004).
 

 [2]
 

 . "Benefit” is defined by statute as "gain or advantage,” which includes "the doing of an act beneficial to any person in whose welfare he or she is interested, including any commission, gift, gratuity, property, commercial interest, or any other thing of economic value not authorized by law.” § 838.014(1), Fla. Stat. (2004).
 

 [3]
 

 . The "public official” and "official document" elements were not disputed before the trial court.
 

 [4]
 

 . We do not address Wasserstrom's remaining points on appeal, as we find them to be without merit, and the trial court’s judgment is affirmed on these points.