653 So.2d 1016 (1995)
STATE of Florida, Petitioner,
v.
Eric SCHOPP, Respondent.
No. 84061.
Supreme Court of Florida.
March 23, 1995.
Rehearing Denied May 1, 1995.
*1017 Robert A. Butterworth, Atty. Gen., Joan Fowler, Sr. Asst. Atty. Gen. and Patricia Ann Ash, Asst. Atty. Gen., West Palm Beach, for petitioner.
Richard L. Jorandby, Public Defender and Anthony Calvello, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for respondent.
KOGAN, Justice.
We have for review Schopp v. State, 641 So.2d 141, (Fla. 4th DCA 1994), which presents *1018 the question of whether a trial court's failure to conduct adequate inquiry into alleged discovery violations under this Court's decision in Richardson v. State, 246 So.2d 771 (Fla. 1971), should continue to be treated as per se reversible error.[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.

NOTICE OF VOLUNTARY DISMISSAL
Before we address the certified question, we must address Schopp's contention that this Court lacks jurisdiction because he filed a notice of voluntary dismissal in the district court prior to the final disposition of his appeal. The decision under review was issued on July 6, 1994. Schopp filed a timely motion for rehearing and the State filed a timely petition for review in this Court. While the motion for rehearing was pending in the district court, Schopp filed a notice of voluntary dismissal pursuant to Florida Rule of Appellate Procedure 9.350(b). The State filed a motion to strike the notice. On August 1, 1994, Schopp sought a writ of mandamus from this Court compelling the district court to dismiss the appeal. On August 15, the district court denied the motion for rehearing and granted the State's motion to strike the notice. Then, on September 1, Schopp filed a motion to dismiss the State's petition for review alleging that this Court lacks subject matter jurisdiction because he filed his notice of voluntary dismissal before the district court's decision became final. This Court denied both the petition for writ of mandamus and the motion to dismiss.
Florida Rule of Appellate Procedure 9.350(b) provides in pertinent part:
A proceeding of an appellant or petitioner may be dismissed before a decision on the merits by filing a notice of dismissal with the clerk of the court....
Schopp argues that since his notice of voluntary dismissal was filed before the district court's decision became final, his appeal had to be dismissed as a matter of right; and therefore there is no decision for this Court to review.
We agree with Schopp that his notice of dismissal was timely filed under rule 9.350(b) because there was no "decision on the merits" until the district court disposed of his motion for rehearing. See Fla. R.App.P. 9.020(g)(1) (a decision is not rendered for appellate purposes until disposition of motion for rehearing); Cf. Haverley v. Clann, 196 So.2d 38 (Fla. 2d DCA 1967) (notice of dismissal due to settlement would have been timely filed under rule providing for the filing of such notice "before a decision on the merits" if notice had been filed prior to resolution of motion for rehearing). However, the fact that the notice was timely filed does not end our analysis. Even where a notice of voluntary dismissal is timely filed, a reviewing court has discretion to retain jurisdiction and proceed with the appeal. Cf. Ervin v. Capital Weekly Post, 97 So.2d 464 (Fla. 1957) (this Court retained jurisdiction to consider issue of public importance where appellees sought dismissal prior to initial decision); Phibro Resources Corp. v. Department of Environmental Regulation, 579 So.2d 118 (Fla. 1st DCA) (district court retained jurisdiction where case had been settled while motions for rehearing were pending and notices of voluntary dismissal had been filed prior to decision on rehearing), cause dismissed, 592 So.2d 679 (Fla. 1991). This is particularly true where, as here, the case presents a question of public importance and substantial judicial labor has been expended as evidenced by the issuance of an initial opinion. Accordingly, it was within the district court's discretion to retain jurisdiction and refuse to withdraw its opinion certifying the question of public importance to this Court.

CERTIFIED QUESTION
Next, we turn to the certified question which arises in the following context. Eric Schopp was charged with armed burglary *1019 and grand theft, but was convicted of the lesser included offenses of burglary and petit theft. At trial, the State sought to call the responding officer as a witness. Defense counsel objected because the officer was not on the State's original witness list. The prosecutor acknowledged that the officer inadvertently had been omitted from the original list but stated that the officer's name had been added to an amended list given defense counsel shortly before trial. The prosecutor told the court that the officer was going to testify to information contained in a report that had been supplied to the defense during pretrial discovery. The trial court overruled the objection and refused to continue the inquiry into the violation in light of the fact that Schopp had filed a demand for speedy trial. The court concluded that under the circumstances a Richardson hearing was not required; thus, no inquiry was made into whether the defense was prejudiced by the violation and no consideration was given to sanctions that might have averted any prejudice.
On appeal, the district court felt compelled to reverse by this Court's decision in Smith v. State, 500 So.2d 125 (Fla. 1986), which held the failure to conduct a Richardson hearing per se reversible error. The district court reversed despite the fact that it was "absolutely convinced that the admission of the testimony of the undisclosed witness and the failure to conduct a Richardson inquiry were harmless," under the harmless error analysis set out in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Schopp v. State, 641 So.2d at 142.
The district court considered the following facts in finding the error harmless: 1) the undisclosed witness presented testimony that was known to the defendant, was cumulative to other testimony, and concerned facts openly admitted by the defendant; 2) defense counsel admitted during opening statement that Schopp committed the offenses of which he was ultimately convicted; and 3) Schopp was acquitted of the charged offenses and thus "won" his case. 641 So.2d at 142. Pointing to our discussion of the harmless error analysis in DiGuilio, the district court suggests that we reconsider our decision in Smith. Id.
In Smith, we were asked to consider whether a new trial is required when a trial court's failure to conduct a Richardson hearing is found to be harmless by the reviewing court. We reiterated that the failure to make a Richardson inquiry must be considered per se reversible error because a reviewing court is in no position to determine from a cold record whether a discovery violation is harmless. See Wilcox v. State, 367 So.2d 1020, 1023 (Fla. 1979); Cumbie v. State, 345 So.2d 1061, 1062 (Fla. 1977). We reasoned that an appellate determination as to whether a Richardson violation is harmless is impossible in light of the fact that "[t]he purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice." 500 So.2d at 126 (quoting Wilcox, 367 So.2d at 1023.) We explained:
The certified question in [Smith] misapprehends the very purpose of a Richardson hearing, which is precisely to determine if a violation is, in fact, harmless. One cannot determine whether the state's transgression of the discovery rules has prejudiced the defendant (or has been harmless) without giving the defendant the opportunity to speak to the question. We repeat what the court made clear in Wilcox. A reviewing court cannot determine whether the error is harmless without giving the defendant the opportunity to show prejudice or harm. 367 So.2d at 1023. In Wilcox, ... this Court explained that the question of "prejudice" in a discovery context is not dependent upon the potential impact of the undisclosed evidence on the fact finder but rather upon its impact on the defendant's ability to prepare for trial[.]
500 So.2d at 126.
This distinction between substantive and procedural prejudice in the context of discovery violations continues to be a valid one. However, this case demonstrates that there are cases in which a reviewing court can determine that a discovery violation is harmless beyond a reasonable doubt, absent an adequate Richardson inquiry at the trial level.[2] *1020 Here, we can say beyond a reasonable doubt that neither the discovery violation nor the trial court's failure to inquire into whether corrective sanctions were warranted materially hindered the defendant's trial preparation or strategy.
We explained in DiGuilio that a defendant has a constitutional right to a fair trial free of harmful error. This right has been recognized by the legislature in section 924.33, Florida Statutes (1993), which provides that harmless error analysis is applicable to all judgments.[3] While the courts may establish a rule of per se reversal for certain types of errors, a per se rule is appropriate only for those errors that always vitiate the right to a fair trial and therefore are always harmful. 491 So.2d at 1134-35. With this restriction in mind, we have never held that the failure to conduct a Richardson hearing always results in an unfair trial. Rather, we established the per se reversal rule based on our assumption that "no appellate court can be certain that errors of this type are harmless." Cumbie v. State, 345 So.2d 1061, 1062 (Fla. 1977).
While in the vast majority of cases this assumption holds true, we now recognize that there are cases, such as this, where a reviewing court can say beyond a reasonable doubt that the defense was not prejudiced by the underlying violation and thus the failure to make adequate inquiry was harmless error. While this case is clearly the exception rather than the rule, it illustrates that a per se reversal rule is not warranted in this context. It also leads us to agree with the State that continued application of the per se reversal rule to all Richardson violations would have the effect of "elevating form over substance," contrary to section 924.33. DiGuilio, 491 So.2d at 1135.
Application of a harmless error analysis in this context will result in reversal where the record will not support a finding that the unsanctioned discovery violation could not have materially hindered the defense. However, where, as here, the appellate court truly can rule the error harmless, there will be no need to order a new trial. Moreover, under a harmless error analysis any concern that "a reviewing court cannot determine whether the error is harmless without giving the defendant the opportunity to show prejudice," Smith, 500 So.2d at 126, is dispelled by the fact it is the State's burden to establish that the error is harmless. DiGuilio, 491 So.2d at 1138. Thus, if the record is insufficient for the appellate court to determine that the defense was not prejudiced by the discovery violation, the State has not met its burden and the error must be considered harmful.
In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action must be considered. If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that *1021 the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.
This analysis recognizes the procedural prejudice inherent in discovery violations. It also takes into account the fact that errors that reasonably could affect trial preparation or strategy are "prejudicial," and therefore harmful for appellate purposes, only when a change in trial tactics reasonably could have benefited the defendant by resulting in a favorable verdict.
We recognize that in the vast majority of cases it will be readily apparent that the record is insufficient to support a finding of harmless error. We also recognize that where the defendant's trial preparation or strategy reasonably could have been affected by the discovery violation it will be difficult to determine whether the verdict could have differed had the violation not occurred or had the trial court acted to avert the prejudice. However, the mere fact that there is a high probability that a given error will be found harmful does not justify categorizing the error as per se reversible. DiGuilio, 491 So.2d at 1137. Thus, we recede from Smith, Cumbie, Wilcox, and their progeny to the extent that they require per se reversal, and we hold that the harmless error analysis set forth above should be applied where a trial court fails to conduct an adequate Richardson inquiry.
Our recognition that a Richardson violation can be harmless is not intended to minimize the need for compliance with the rules of discovery; nor is it intended to diminish the importance of a thorough inquiry into alleged discovery violations by the trial court. Application of harmless error analysis in this context in no way sanctions either discovery violations or the failure to conduct a Richardson hearing when such hearing is warranted. We have repeatedly stressed that possible prejudice resulting from discovery violations is best addressed and remedied at the trial level. See, e.g., Smith; Wilcox; Richardson. Not only is the trial court better equipped to deal with discovery violations, if the trial court determines that a party has been prejudiced by the violation there are numerous remedial sanctions that can be imposed at that stage of the proceedings. See Fla.R.Crim.P. 3.220(n)(1), (2).[4] Trial courts should make every effort to adequately address alleged discovery violations because proper inquiry and corrective action by the trial court can eliminate the potential for reversal on appeal and thus avert the need for a new trial. We emphasize that the requirements set forth in Richardson and its progeny should be adhered to with the same conviction as they were when noncompliance resulted in per se reversal.
Because it is clear in this case that the State's failure to include the officer on its original witness list could not have materially hindered the defense, the trial court's failure to adequately inquire into what, if any, corrective measures should have been taken was harmless beyond a reasonable doubt. During discovery, defense counsel was given the police report, which was consistent with the officer's testimony at trial. The challenged testimony was cumulative to other testimony, including that of the defendant. And, even if the officer had been listed as a witness and the defense had deposed him, there would have been nothing in the officer's testimony *1022 that could have supported a strategy different from that taken  to admit that Schopp committed burglary but maintain that he was unarmed and did not know that he was stealing a firearm. Moreover, because Schopp effectively "won" his case, there is no reasonable possibility that a change in trial tactics could have benefited him.
Accordingly, we quash the decision under review and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and SHAW and WELLS, JJ., concur.
HARDING, J., dissents with an opinion, in which OVERTON, J., concurs.
ANSTEAD, J., recused.
HARDING, Justice, dissenting.
I disagree with the majority's decision to recede from the per se rule where a trial court fails to conduct an adequate Richardson[5] inquiry. I dissent for three reasons: 1) the wording of the question; 2) the doctrine of stare decisis; and 3) the prophylactic nature of the per se rule.
Initially, I note that the very wording of the certified question convinces me that it should be answered in the negative. The district court asks whether the per se rule of Smith v. State, 500 So.2d 125 (Fla. 1986), should be "reconsidered" in light of the principles set forth in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Schopp v. State, 641 So.2d 141, 143 (Fla. 4th DCA 1994). Smith simply reaffirmed the per se rule that the Court announced in Cumbie v. State, 345 So.2d 1061, 1062 (Fla. 1977) (finding trial court's error in admitting evidence that violated discovery rules "reversible as a matter of law"). While the district court's opinion recognizes that DiGuilio was decided before Smith,[6] the district court is troubled by Smith's failure to discuss DiGuilio. Schopp, 641 So.2d at 142. However, I do not believe that Smith's failure to discuss or cite DiGuilio evidences a lack of consideration of the principles announced in DiGuilio. In fact, the certified question in Smith specifically asked whether a new trial is required for failure to conduct a Richardson inquiry where the reviewing court finds the error to be harmless. Smith, 500 So.2d at 125. Moreover, the time frames involved in these two cases convince me that the Court was cognizant of the DiGuilio principles when it reaffirmed the per se rule in Smith, but determined that they were inapplicable. The Court heard oral argument in DiGuilio fifteen months before it heard argument in Smith;[7] the opinion in DiGuilio was issued over five months before Smith. Just as the legislature is presumed to know the existing law when it enacts a statute, I believe this Court can be presumed to know and follow its own existing case law.
This Court has repeatedly and consistently held that "[f]ailure to disclose discoverable material is reversible as a matter of law absent a Richardson inquiry." Cooper v. State, 377 So.2d 1153, 1155 (Fla. 1979); see also Barrett v. State, 649 So.2d 219 (Fla. 1994); Smith, 500 So.2d at 125; Kilpatrick v. State, 376 So.2d 386, 389 (Fla. 1979); Wilcox v. State, 367 So.2d 1020, 1023 (Fla. 1979); Cumbie, 345 So.2d at 1062. Thus, the per se rule has been a part of Florida law for nearly twenty years.
Now, in spite of our repeated holdings to the contrary, the majority announces a change in this long-standing rule because of one case it finds to be "the exception rather than the rule." Majority op. at 1020. I do not believe that one anomalous case warrants such drastic action; a long-standing rule of law should fall for a more compelling reason. Moreover, this Court already determined that the per se rule was applicable even to such exceptional cases as the one presented here. In the State's motion for rehearing in Smith, this Court was asked to consider the *1023 application of the rule in such an "extreme case." The State argued that this Court ignored the fact that the per se rule would also extend to "extreme cases" where there was overwhelming, conclusive evidence, such as a defendant's confession, coupled with a minor discovery violation. The State also argued that the per se rule would frustrate the legislative intent "that no judgment be reversed unless the error committed `injuriously affected the substantial rights of the appellant.'" This argument did not persuade the Court, and rehearing was denied.
The doctrine of stare decisis provides stability to the law and to the society governed by that law. While no one would advocate blind adherence to prior law, certainly a change from that law should be principled. Where a rule of law has been adopted after reasoned consideration and then strictly followed over the course of years, the rule should not be abandoned without a change in the circumstances that justified its adoption. The only circumstance that has changed since the Court issued its decision in Smith is the membership of the Court.
As Justice Overton stated in his concurrence in Perez v. State, 620 So.2d 1256, 1259 (Fla. 1993) (Overton, J., concurring), "adhering to precedent is an essential part of our judicial system and philosophy." Justice Overton also explained that the doctrine of stare decisis requires an examination of
"the possible significance of intervening events, the possible impact on settled expectations, and the risk of undermining public confidence in the stability of our basic rules of law. Such a separate inquiry is appropriate not only when an old rule is of doubtful legitimacy ... but also when an old rule that was admittedly valid when conceived is questioned because of a change of circumstances that originally justified it."
Id. (quoting John P. Stevens, The Life Span of a Judge-Made Rule, 58 N.Y.U.L.Rev. 1, 9 (1983)).
As even the district court noted in its opinion below, there are "substantial policy concerns underlying the per se rule." Schopp, 641 So.2d at 142. In fact, the very purpose of the Richardson inquiry is to determine if a violation is in fact harmless. Smith, 500 So.2d at 126. The court may ultimately conclude that a discovery violation is harmless and no remedial action is required. However, that conclusion can only be reached where the defendant has been given an opportunity to show prejudice or harm. Smith, 500 So.2d at 126.
While the majority opinion correctly notes that the prejudice at issue in the discovery context is procedural rather than substantive, majority op. at 6-7, it focuses solely upon a single aspect of the prejudice, whether the discovery violation prevented the defendant from properly preparing for trial. As this Court explained in Wilcox, there are two separate but interrelated aspects of prejudice in the discovery context: 1) whether the discovery violation prevented the defendant from properly preparing for trial; and 2) what is the proper sanction to invoke for the discovery violation. 367 So.2d at 1023. Granted, if a court determines that a defendant was not prejudiced in trial preparation or strategy by a discovery violation, it may also determine that no sanction is warranted. Smith, 500 So.2d at 126. But without an adequate Richardson inquiry[8] the court cannot determine if a discovery violation was willful and warrants a sanction on that basis.
Finally, as this Court stated in Wilcox, "[i]t should not be forgotten that the discovery sanctions are designed in part to deter willful discovery violations." 367 So.2d at 1023 n. 3. Should the court determine that counsel has willfully violated an applicable discovery rule, or an order issued pursuant thereto, it is authorized to impose "appropriate sanctions," including "contempt proceedings against the attorney, as well as the assessment of costs incurred by the opposing party, when appropriate." Fla.R.Crim.P. 3.220(n)(2).
I believe the per se rule has served as an important prophylactic against willful violations *1024 of the discovery rules. The majority opinion states that "the requirements set forth in Richardson and its progeny should be adhered to with the same conviction as they were when noncompliance resulted in per se reversal." Majority op. at 1021. While these are nice words, my twenty-three years of experience on the trial bench and four years on the appellate bench make me doubt that this admonition will achieve its intended purpose. Even with the per se rule, we have seen many cases where the trial court failed to conduct a required Richardson hearing, as in the instant case. This makes me question how much weight the majority's admonition will carry without the big stick of the per se rule backing it up. The Court may be opening the door for a little toe, but I fear that a very large foot is attached to that toe.
OVERTON, J., concurs.
NOTES
[1] The Fourth District Court of Appeal has certified the following question as being of great public importance:

SHOULD THE PER SE RULE OF SMITH [v. STATE, 500 So.2d 125 (FLA. 1986)] BE RECONSIDERED IN LIGHT OF THE PRINCIPLES SET OUT IN [STATE v.] DIGUILIO [, 491 So.2d 1129 (FLA. 1986)]?
Schopp v. State, 641 So.2d 141, 143 (Fla. 4th DCA 1994).
[2] We find no merit to the State's contention that the trial court conducted an adequate inquiry in this case. Even though there was inquiry as to the violation itself, there was no inquiry into the prejudice the violation may have caused the defense. Inquiry into the prejudicial effect of the violation is clearly required under Richardson. See Wilcox v. State, 367 So.2d 1020, 1022 (court must inquire as to whether the discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and what effect the violation may have had on the defendant's ability to prepare for trial).
[3] Section 924.33, Florida Statutes (1993), provides:

No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
[4] Florida Rule of Criminal Procedure 3.220(n) provides in pertinent part:

(1) If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order the party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
(2) Willful violation by counsel of an applicable discovery rule, or an order issued pursuant thereto, shall subject counsel to appropriate sanctions by the court. The sanctions may include, but are not limited to, contempt proceedings against the attorney, as well as the assessment of costs incurred by the opposing party, when appropriate.
[5] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[6] Smith v. State, 500 So.2d 125 (Fla. 1986), was issued on December 24, 1986, five months after State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), was issued on July 17, 1986.
[7] DiGuilio was argued February 8, 1985, while Smith was argued June 2, 1986.
[8] A Richardson inquiry must at least determine whether the violation was inadvertent or willful, trivial or substantial, and what effect, if any, the violation had upon the defendant's ability to prepare for trial. Wilcox v. State, 367 So.2d 1020, 1022 (Fla. 1979); Richardson, 246 So.2d at 775.