SCHWARTZ, Senior Judge
(dissenting).
I would not recognize the voluntary dismissal in this case, which was filed only after an oral argument which went very badly for the appellant.[1] See United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); State v. Schopp, 653 So.2d 1016 (Fla.1995).
Instead, I would affirm on the basis of the well-reasoned decision of the trial court:
ORDER ON EXCEPTIONS TO REPORT AND RECOMMENDATIONS OF GENERAL MASTER
[[Image here]]
FACTS
1. The Final Judgment of Dissolution of Marriage was entered in this action on May 19, 1992. The parties subsequently entered into a Settlement Agreement dated July 3, 1997, that was ratified by this Court on July 30, 1997, and a second Settlement Agreement dated June 6, 2001, that was ratified by this Court on June 14, 2001.
2. The parties have three daughters, Ashley, 20 years old, who is a college student, Jamie, 18, who attends Auldern Academy in North Carolina, and Carly, who is 15 years old. This current round of litigation solely involves Jamie.
3. Under the June 6, 2001, agreement, Ira’s child support obligation for Jamie was set at $1600 per month until she reaches 18 or graduates high school, and he also agreed to be responsible for “the minor children’s private school expenses (if any).” Under the July 3, 1997, agreement, Ira agreed to be responsible for all of the children’s un-reimbursed medical expenses.
4. Jamie failed the ninth grade and her parents placed her in a South Florida private therapeutic boarding school. The evidence was disputed about how she did there. During the summer of 2002, the parties went to educational consultant Martha Moses, who recommended that Jamie be placed in the SUWS wilderness program in North Carolina. Ira paid for all of the expenses associated with Jamie’s participation in the SUWS program.
*603 5. Consultant Martha Moses recommended that Jamie should not return to Miami after her completion of the SUWS program and that she should be placed in a private out-of-state therapeutic boarding school. The Auldern Academy in North Carolina was recommended to the parents. Judi preferred other similar schools, but Ira chose Aul-dern. Ira testified [that] he told Judi that if he was going to pay for the expenses associated with Jamie’s attendance at Auldern Academy, he wanted a significant reduction in child support for Jamie. Otherwise he refused to pay for Auldern and wanted Jamie to return to her former local private school. Judi believed that Auldern Academy was a private school and that Ira was therefore required to pay for those expenses under the terms of the parties’ Settlement Agreement dated June 6, 2001. In early October 2002, Ira enrolled Jamie at Auldern Academy and paid all associated expenses.
THE MASTER’S REPORT
6. The General Master made two findings of fact in his report and recommendations which are central to this dispute: (1) “It is obvious that both parties agreed that Jamie’s best interest would be served by her attending a therapeutic boarding school outside Florida.” And, (2) he found that on September 30, 2002, shortly before the parents were ready [to] pick Jamie up at the wilderness program and take her to her next school, they agreed that if Ira paid for Auldern, he could reduce his child support payments from 1600 to 650 dollars a month for Jamie. Each of these findings is supported by competent, substantial evidence and must be accepted by the court, notwithstanding Judi’s protestations about the support reduction agreement.
THE MASTER’S ERROR
7. The General Master made one fundamental error of law at the beginning of his report which then skewed every other finding in the report and made all but one of them erroneous. He found in paragraph 2 of the report that because, when the parties entered into the June 6, 2001, agreement, they did not contemplate sending Jamie to a private, therapeutic boarding school, “the parties did not intend for the term private school to encompass therapeutic boarding school.”
8. While this court is bound by the Master’s supported fact findings, it is not bound by his legal conclusions, Sniffen v. Sniffen, 382 So.2d 823 (Fla. 4th DCA 1980), including his interpretation of the parties’ contracts. A contract needs to be interpreted in accordance with its clear and unambiguous terms. Avis Rent A Car Sys., Inc. v. Monroe County, 660 So.2d 413 (Fla. 3d DCA 1995). Words must be given their ordinary meaning. Transamerica Ins. Co. v. Rutkin, 218 So.2d 509 (Fla. 3d DCA 1969). There is no mystery to the term “private school.” It is quite simply a school that is privately operated, as opposed to being a public school. There is not the slightest doubt on this record that Auldern is a private school. The Master found that attending Auldern was in Jamie’s best interest. Therefore, under the clear terms of the agreement between the parties, Ira was required to pay for the school. If Ira was not required to pay for Auldern as a private school, then likely he was required to pay for the therapeutic boarding school as a medical expense.
9. What occurred in this case, unfortunately, is that Ira held his own daugh *604 ter hostage in order to extract from Judi the agreement for a reduction in child support. Since Ira had a contractual obligation to pay for Auldern and to send his daughter there, there was no consideration for the oral agreement to reduce child support; in addition, it is invalid because it is the product of coercion. Ira argues that Judi never asserted these contract defects, but in this court’s role as parens patriae it cannot countenance holding a child’s welfare for ransom as was done in this case.
10. Ira may very well have been entitled to relief with respect to the amount of child support he was required to pay while Jamie was at Auldern. He just went about it the wrong way. He should have paid the Auldern bills and then filed a supplemental petition to reduce child support due to the change in circumstances. He has never done this. There was nothing wrong with Judi’s motions to enforce the June 6, 2001, agreement and the contempt motion; Ira provoked them by violating the agreements of the parties. The Master was consequently in error in requiring Judi to pay Ira $15,000 under their agreement for litigating the issue of child support — if that part of the agreement is even valid on public policy grounds, which this court need not presently decide. The only part of the Master’s report which is legally valid is the recommendation for an accounting as to how Judi spends the child support for Jamie. Fla. Stat. § 61.13(l)(a).
11. Ira’s counsel has heaped an incredible amount of scorn and personal invective on Judi’s lawyer, who really should be commended for sticking with a difficult piece of litigation against an evidently far wealthier opponent on behalf of a client who could not afford to pay him. Ira is not entitled to collect attorney’s fees from Judi; rather the court will award to Judi reasonable fees for this litigation to be paid by Ira under Fla. Stat. § 61.16.

. And after, as was technically unknown to, although obviously suspected by, his counsel, an opinion of affirmance had already been prepared.