916 So.2d 55 (2005)
Joseph GILES, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-4936.
District Court of Appeal of Florida, Second District.
December 14, 2005.
*56 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Donna S. Koch, Assistant Attorney General, Tampa, for Appellee.
FULMER, Chief Judge.
After a jury trial, Joseph Giles was convicted of dealing in stolen property in violation of section 812.019(1), Florida Statutes (2004). Giles raises two issues on appeal, only one of which merits discussion. Because we conclude that the trial court failed to conduct an adequate inquiry into a potential discovery violation committed by the State, we reverse and remand for a new trial.
Giles was employed at an automobile repair shop. After he had been working about a month, another employee received a telephone call in which the caller stated that Giles had been pawning the shop's tools at a certain pawnshop. Alerted that tools might be missing, one of the shop's mechanics discovered that his ProVision automotive eye tool  a device that enables mechanics to look inside otherwise inaccessible places, such as engines  was indeed gone, as were other tools, such as sanders, buffers, and grinders. The detective who investigated the incident testified that a computer check revealed that Giles had been pawning tools, including an automotive eye tool, at the pawnshop named by the caller. The mechanic whose automotive eye tool was missing identified the pawned tool as his. Giles was charged with dealing in stolen property.
On cross-examination by defense counsel, the investigating detective stated that he had learned that other tools had been pawned by Giles at the same pawnshop *57 within the same general time frame as the automotive eye tool. The detective stated that he had not provided this information to Giles, or to the State for that matter, because the victim was not sure that these other tools were his. Defense counsel then moved for a Richardson[1] hearing because information about the other pawned tools had not been provided in discovery. After a brief bench conference, the court denied Giles's motion, and the trial proceeded to a guilty verdict. Giles appeals the trial court's failure to conduct an adequate Richardson hearing with respect to information about Giles's other alleged pawns.
When, during the course of a trial, the court learns of a possible discovery violation, the court must conduct a two-step inquiry. First, the court must determine whether a discovery violation actually occurred. Sinclair v. State, 657 So.2d 1138, 1140 (Fla.1995). Next, if a violation is found, the court, pursuant to Richardson, "must assess whether the State's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what affect [sic] it had on the defendant's ability to prepare for trial." Id. at 1140.
In this case, the entirety of the trial court's inquiry, conducted at a bench conference during defense counsel's cross-examination of the investigating detective, was as follows:
[Defense counsel]: Your Honor, we were not provided this information in discovery that there were other items that were found to be pawned. At this time I would ask for a Richardson Hearing.
[Prosecutor]: Your Honor, the State didn't have access to that information. We provided all the information to [defense counsel]. The only deposition that were taken were [sic] of [the victim]. And none of that information was ever requested, nor was deposition taken of the officer to inquire of the information.
The Court: Did anything appear in any of the reports telling anything?
[Prosecutor]: No, Your Honor.
The Court: Was the officer's deposition taken?
[Prosecutor]: No, Your Honor.
The Court: Motion is denied.
The court's question to the prosecutor "Did anything appear in any of the reports...?" was a proper inquiry to initiate a determination of whether a discovery violation had occurred. It appears that the court was attempting to determine whether the State had violated Florida Rule of Criminal Procedure 3.220(b)(1)(B), which requires that:
[T]he prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, test, and photograph the following information and material within the state's possession or control:... the statement of any person whose name is furnished in compliance with the preceding subdivision [i.e., list of State witnesses].... The term "statement" is specifically intended to include all police and investigative reports of any kind prepared for or in connection with the case, but shall not include the notes from which those reports are compiled....
(Emphasis supplied.) When the prosecutor replied that there was no report in the first place, the court apparently concluded that no discovery violation had taken place and therefore did not proceed to the second step of the inquiry.
*58 There are at least two shortcomings in the trial court's inquiry. First, the court failed to determine from the investigating detective, who was still on the witness stand, whether he had an "investigative report[] of any kind prepared for or in connection with the case" that contained the information about Giles's other pawns. If the detective had prepared such a report, Giles was entitled to its disclosure, irrespective of whether the State was aware of it. The fact that the State was not privy to a report prepared by the detective would not have excused the State from its discovery obligations because the State is charged with constructive knowledge of information possessed by other departments of the executive branch. See, e.g., Tarrant v. State, 668 So.2d 223, 225 (Fla. 4th DCA 1996) ("It is well-settled that the state is charged with constructive knowledge and possession of evidence withheld by state agents, including law enforcement officers."). By not questioning the detective as well as the prosecutor, the court failed to complete the first step of the Richardson inquiry.
The second shortcoming, also involving the first step of the Richardson inquiry, was the court's failure to determine whether the nondisclosure of the information on Giles's pawns violated other relevant discovery rules. Although the information does not appear to fit any of the other categories listed in rule 3.220(b)(1), it could constitute exculpatory information, whose disclosure is required by rule 3.220(b)(4).[2]
We conclude that by failing to thoroughly inquire as to whether a discovery violation had occurred, the trial court did not conduct an adequate Richardson inquiry. We must now determine whether this Richardson violation was harmless beyond a reasonable doubt. See State v. Schopp, 653 So.2d 1016, 1019-21 (Fla. 1995). The Florida Supreme Court has set forth the following harmless error rule specific to Richardson violations that allows for an analysis under either of two prongs. Id. at 1020-21. First, "if the record is insufficient for the appellate court to determine that the defense was not prejudiced by the discovery violation, the State has not met its burden [to establish that the error is harmless] and the error must be considered harmful." Id. at 1020. Alternatively:
[T]he appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action must be considered.
Id.
Based on our analysis under either prong, we cannot say that the trial court's failure to hold an adequate Richardson hearing was harmless beyond a reasonable doubt. First, we note that our review of the record has uncovered nothing to indicate that Giles was not prejudiced by the State's failure to provide the information *59 in question. As to whether the State's failure to provide the information to Giles procedurally prejudiced him, one "conceivable course of action" was that the defense could have used the additional pawns to further impeach the victim's credibility with respect to his identification of the tool as his. The victim had testified that other tools were missing from the shop; he indicated on cross-examination that he was confused about the name of the automotive eye tool;[3] and the investigating detective explained that he did not pass on the information about the additional pawns "because [the victim was] not sure they were actually his tools." In this context, Giles's cross-examination of the victim would have been enhanced had Giles been able to impeach him as to his inability to say with certainty which pawned tools were or were not his. We find that this potential enhancement could reasonably have benefited Giles, which leads us to conclude that he was procedurally prejudiced. Id. As such, we find that the trial court's failure to conduct an adequate Richardson inquiry must be considered harmful. We therefore reverse and remand for a new trial.
Reversed and remanded.
WHATLEY and CANADY, JJ., Concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] Rule 3.220(b)(4) reads:

As soon as practicable after the filing of the charging document the prosecutor shall disclose to the defendant any material information within the state's possession or control that tends to negate the guilt of the defendant as to any offense charged, regardless of whether the defendant has incurred reciprocal discovery obligations.
[3] The victim called the tool a "multimeter mac" in his original statement to police but forgot on cross-examination that he had used this term. He then testified that a "multimeter mac" and a ProVision automotive eye tool were the same thing.