IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


DAVID AUSTIN TYSON,

        Appellant,

 v.

Case No.  5D23-125
LT Case No. 45-2021-CF-220

STATE OF FLORIDA,

        Appellee.

_____/

Opinion filed May 19, 2023

Appeal from the Circuit Court
for Nassau County,
James H. Daniel, Judge.

Rick A. Sichta and Susanne K.Sichta,
of The Sichta Firm, LLC, Jacksonville,
for Appellant.

Ashley Moody, Attorney General, and
Adam B. Wilson, Assistant Attorney
General, Tallahassee, for Appellee.


BOATWRIGHT, J.

Appellant, David Tyson, appeals his judgment and sentence, where a jury of his peers found him guilty of aggravated assault on a law enforcement officer, battery on a law enforcement officer, resisting arrest with violence, and carrying a concealed firearm. Appellant argues on appeal that the trial court reversibly erred when it did not conduct a Richardson[1] hearing after it was apprised that the State violated Florida Rule of Criminal Procedure 3.220 by not producing statements allegedly made by Appellant during discovery and then using them at trial. We agree and reverse Appellant's judgment and sentence and remand for a new trial.

I.

In March 2021, Appellant and his girlfriend, along with his two minor children, traveled to Nassau County to go the beach. When they arrived at the beach, they stopped at the guard shack at the entrance to the beach. Although the guard informed Appellant that he could not drive on the beach because he was not a Nassau County resident, Appellant proceeded to drive on the beach. The guard then flagged down two deputies with the Nassau County Sheriff's Office, who approached Appellant and requested that he

---

[1] The term "Richardson hearing" refers to the Florida Supreme Court's opinion in Richardson v. State, in which the Court recognized a defendant's right to a hearing on a possible discovery violation and delineated the procedure for such a hearing. 246 So. 2d 771 (Fla. 1971).

produce identification demonstrating his residency. According to the deputies, after they informed Appellant that he needed to remove his vehicle from the beach because he could not produce identification demonstrating his residency, he became irate and refused to leave the beach. A physical altercation ensued between Appellant and the deputies, and Appellant was arrested on multiple charges based on the altercation.

The case proceeded to a jury trial. Although the beach was crowded on the date of the incident, the only eyewitnesses to the physical altercation called by State were the two deputies. At trial, the deputies testified that Appellant initiated the physical altercation after one deputy indicated he was going to arrest Appellant if he continued to refuse to leave the beach. In particular, one deputy testified that Appellant forcefully shoved him, causing him to draw his taser. The deputy stated that Appellant then grabbed a firearm from inside his truck and raised the barrel toward him, at which point he tased Appellant and arrested him. Although the deputies had bodycam equipment with them, they did not turn on their cameras until after Appellant had been arrested.

Appellant testified to his version of the events surrounding the altercation. According to Appellant, the deputies were responsible for physically escalating the altercation. Notably, Appellant testified that he

3

never drew a firearm on the deputy. Instead, he alleged that when the deputy drew his taser, he perceived the taser to be a firearm, and attempted to get into his truck to avoid the taser. As a result, while getting into his truck, he bumped into the driver's side door which caused the firearm to fall out of the side door panel. Appellant's girlfriend and one of his children were also eyewitnesses to the incident, and they testified to a version of events that was consistent with Appellant's testimony.

Towards the end of Appellant's testimony, while on cross-examination, the State confronted Appellant with an internal Nassau County Sheriff's Office complaint and related email. Both items were purported to contain statements made by Appellant, but these items were not turned over to the defense in discovery. The State initially used the complaint as an attempt to impeach Appellant concerning an alleged prior inconsistent statement he had made during trial. When Appellant denied having authored the complaint, the State cross-examined Appellant with the email, which purportedly contained a statement indicating that he made the complaint. Appellant denied creating or sending the email. Of utmost importance, the State could not authenticate either the complaint or the email and never tried to enter them into evidence.

On redirect, defense counsel attempted to rehabilitate Appellant's credibility by introducing the complaint and email into evidence to demonstrate that Appellant did not create them. The State objected that the documents were inadmissible because they were hearsay. Following a sidebar conference, the trial court sustained the State's objection.

During the sidebar conference, defense counsel alleged that the complaint and email had not been provided during discovery and argued that the State's impeachment of Appellant with them was prejudicial, particularly since the court would not allow the physical documents to be introduced into evidence in an attempt to rehabilitate Appellant's credibility. The trial court acknowledged that defense counsel was alleging the State had committed a discovery violation, but then failed to hold a <u>Richardson</u> hearing.

In its closing argument, the State again used the complaint and the email to collaterally impeach Appellant's credibility by insinuating that he had lied to the jury when he denied authoring the complaint and the email, and had fabricated the complaint in anticipation of trial. After closing arguments, the jury found Appellant guilty on all counts. Because he had no prior record, he was sentenced to the minimum sentence, which was a three-year minimum mandatory department of corrections sentence.

On appeal, Appellant asserts that the State violated its discovery obligations under rule 3.220 when it failed to produce the complaint and email to the defense during discovery and then proceeded to use those documents to challenge his credibility during cross-examination, as well as in its closing argument. Appellant contends that the trial court erred when it failed to conduct a <u>Richardson</u> hearing after this discovery violation was brought to its attention. As a result, Appellant argues that this error was not harmless because the defense was procedurally prejudiced by the discovery violation. We agree.

## II.

During pretrial discovery in criminal proceedings, the State is required to disclose "any written or recorded statements and the substance of any oral statements made by the defendant, including a copy of any statements contained in police reports or report summaries, together with the name and address of each witness to the statements." <u>See</u> Fla. R. Crim. P. 3.220(b)(1)(C). "Florida's criminal discovery rules are designed to prevent surprise by either the prosecution or the defense." <u>Scipio v. State</u>, 928 So. 2d 1138, 1144 (Fla. 2006) (quoting <u>Kilpatrick v. State</u>, 376 So. 2d 386, 388 (Fla. 1979)). The purpose of these rules "is to assist the truth-finding function

6

of our justice system and to avoid trial by surprise or ambush." Id. (citing State v. Evans, 770 So. 2d 1174, 1182 (Fla. 2000)).

When it is brought to the court's attention that the State has failed to comply with its discovery obligations under rule 3.220, the trial court "must conduct a Richardson hearing to determine if the defendant has been prejudiced." Lynch v. State, 925 So. 2d 444, 445 (Fla. 5th DCA 2006) (citing Evans, 770 So. 2d at 1174; Stimus v. State, 886 So. 2d 996 (Fla. 5th DCA 2004)). Where a trial court fails to conduct a Richardson hearing upon learning of a discovery violation, the question becomes whether the error is harmless. Bess v. State, 208 So. 3d 1213, 1214 (Fla. 5th DCA 2017).

The Florida Supreme Court has articulated a framework for analyzing whether the trial court's error in failing to hold a Richardson hearing was harmless. State v. Schopp, 653 So. 2d 1016, 1021 (Fla. 1995); Scipio, 928 So. 2d at 1138. In Schopp, the Court explained:

> In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action

7

> must be considered. If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.

Schopp, 653 So. 2d at 1020–21 (emphasis added). The burden is on the State to show that the error is harmless. Id. at 1020 (citing State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)). However, "if the record is insufficient for the appellate court to determine that the defense was not prejudiced by the discovery violation, the State has not met its burden and the error must be considered harmful." Id.

This can be a high burden for the State, because "in the vast majority of cases it will be readily apparent that the record is insufficient to support a finding of harmless error." Id. at 1021. The reason for this is when the trial court fails to hold a Richardson hearing, the defendant has not been given an opportunity to show prejudice on the record in regard to the ability to prepare for trial. See Scipio, 928 So. 2d at 1146 ("One cannot determine whether the state's transgression of the discovery rules has prejudiced the defendant (or has been harmless) without giving the defendant the opportunity to speak to the question." (quoting Schopp, 653 So. 2d at 1021)).

In particular, there is no opportunity for the defendant to show that the trial preparation would have been materially different had the violation not occurred. Id. Thus, in the absence of a Richardson hearing, the reviewing court is "essentially left to speculate as to what strategy the defense would have adopted" if the discovery violation had not occurred. Id. at 1150. Because of this, the Court "emphasized that a finding of harmless error should be 'the exception rather than the rule.'" Id. at 1148 (quoting Schopp, 653 So. 2d at 1020).

It is additionally worth noting that the harmless error analysis in this context focuses on the procedural prejudice from the discovery violation and not whether the violation would have substantively made a difference in the verdict. Id. at 1149–50 (stating that an analysis focusing on "whether the discovery violation would have made a difference in the verdict" would have the effect of making "the standard for procedural prejudice identical to substantive prejudice"). As a result, the relevant inquiry is "whether there is a reasonable possibility that the discovery violation 'materially hindered the defendant's trial preparation or strategy.'" Id. at 1150 (quoting Schopp, 653 So. 2d at 1020). Thus, "only if the appellate court can determine beyond a reasonable doubt that the defense was not procedurally prejudiced by the

discovery violation can the error be considered harmless." Id. (citing Schopp, 653 So. 2d at 1021).

III.

It is clear from the record before us that there was a discovery violation where the State failed to produce the complaint and email at issue to the defense during discovery. The complaint and email contained statements alleged to have been made by Appellant. The State then proceeded to use these documents at trial both during Appellant's cross-examination and during its closing argument. The discovery violation was brought to the trial court's attention through objections made by Appellant's counsel. As a result, the court was required to hold a Richardson hearing, but it failed to do so. Therefore, in determining whether the error was harmless, we must determine whether we can ascertain, beyond a reasonable doubt, that "the discovery violation [did not] 'materially hinder[] the defendant's trial preparation or strategy.'" Scipio, 928 So. 2d at 1150.

The evidence in this case consisted almost entirely of eyewitness testimony; thus, the credibility of the witnesses was of the utmost importance and the key to Appellant's defense. This was especially true regarding Appellant's own trial testimony. The State used the internal complaint and the email in an attempt to impeach Appellant by claiming that he made prior

10

inconsistent statements in regard to his testimony that he gave at trial. Defense counsel, in order to try and cure the harm from the discovery violation, then attempted to introduce the complaint and email into evidence to demonstrate that Appellant did not create the documents. However, the State objected and argued that they should not be introduced on hearsay grounds. The State never authenticated the complaint or the email and never established that Appellant created or made the statements alleged in the documents. The State then used both the internal complaint and the email in closing arguments, arguing that Appellant was not truthful when he claimed he did not author either the internal complaint or the email.

These actions by the State prejudiced Appellant, as it sought to impugn his credibility. As a result, these discovery violations placed Appellant at a clear procedural disadvantage, particularly in light of the trial court's refusal to allow defense counsel to introduce the documents into evidence to rehabilitate his credibility. It is because of this extreme prejudice to Appellant, that situations like this are the very types of discovery violations the discovery rules and courts seek to avoid, so there is not surprise and "trial by ambush." See Id. at 1151 (quoting Binger v. King Pest Control, 401 So. 2d 1310, 1314 (Fla. 1981)).

We further observe that Schopp requires us to consider "every conceivable course of action" in making our determination regarding whether Appellant's "trial preparation or strategy would have been materially different" absent the State's discovery violation. See Schopp, 653 So. 2d at 1020. Indeed, on appeal, Appellant suggests several trial tactics his counsel could have employed had the discovery violation not occurred. First, Appellant asserts that if the complaint and email had been properly disclosed to the defense, defense counsel could have filed a motion in limine to exclude them as they could not be properly authenticated. Appellant also argues that since he disputed creating either of these documents, defense counsel could have investigated, deposed, and presented at trial the records custodian for the documents and/or the individual who actually authored them to refute the State's suggestion that he was lying about having created the documents. Finally, Appellant notes that if he had been apprised that the State was seeking to use the complaint and email at trial, he could have been prepared to address them in his direct testimony, which would have minimized the damaging effect of the documents on his credibility. Thus, after considering "every conceivable course of action," the record shows there is a "reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." See Id.

It should be noted that, although Appellant has proposed various courses of action that defense counsel could have taken to mitigate the damaging effects of the discovery violation, it is ultimately the State's burden on appeal to show that the error is harmless beyond a reasonable doubt. See Id. at 1020–21. The State has not pointed to anything in the record to show that the defense was not prejudiced by the discovery violation. In fact, to the contrary, the record shows that the State capitalized on the defense's unpreparedness to handle the discovery violation and then exploited the discovery violation to gain a strategic advantage at trial.

In addition, once the trial court failed to hold a Richardson hearing, this deprived Appellant of an opportunity to show prejudice on the record; and without a sufficient record, we are now "essentially left to speculate as to what strategy the defense would have adopted" if the discovery violation had not occurred. Scipio, 928 So. 2d at 1150. Thus, the State has failed to show that there is harmless error and demonstrate that this case is "the exception rather than the rule." See Id. at 1147–48 (finding that "the vast majority of cases" will not have a record sufficient "to support a finding of harmless error" (quoting Schopp, 653 So. 2d at 1021)). Because, on this record, we cannot say beyond a reasonable doubt that Appellant was not procedurally

prejudiced by the State's actions, we find the State has failed to meet its burden.

## IV.

Under these circumstances, we cannot determine that the State's discovery violations did not materially hinder Appellant's trial preparation or strategy; and we thus cannot find the error harmless beyond a reasonable doubt. Accordingly, we reverse Appellant's judgment and sentence and remand for a new trial.

REVERSED and REMANDED.

MAKAR and JAY, JJ., concur.